UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**07-21605**

CASE NO. _____ CIV-HIGHSMITH

[ON REMOVAL FROM THE CIRCUIT COURT OF THE ELEVENTH
JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA *McALILEY*
CASE NO. 06-25162-CA-01]

| | |
|---|---|
| LEONARD CHERNYS, an individual, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| STANDARD PACIFIC OF SOUTH | ) |
| FLORIDA, G.P. INC., a foreign profit | ) |
| corporation, and STANDARD PACIFIC | ) |
| CORP., an unregistered corporation, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## NOTICE OF REMOVAL

Defendants, STANDARD PACIFIC OF SOUTH FLORIDA, G.P. INC. and

STANDARD PACIFIC CORP., by and through their undersigned counsel, pursuant to 28 U.S.C.

§§ 1441 and 1446, hereby file this Notice of Removal of this action from the Circuit Court of the

Eleventh Judicial Circuit in and for Miami-Dade County, Florida, to the United States District

Court for the Southern District of Florida, Miami Division.  The removal of this action is based

upon the following:

1.     On November 22, 2006, Plaintiff, Leonard Chernys, filed a civil action in

the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida,

entitled: Leonard Chernys v. Standard Pacific of South Florida., G.P. Inc., and Standard Pacific

Corp., Case No. 06-25162-CA-01.   The Complaint purports to assert claims of Declaratory Judgment, Fraudulent Misrepresentation, Breach of Contract, and Wrongful Termination.

2.      On or about June 18, 2007, Plaintiff filed and served an Agreed Order, and Unopposed Motion to file an Amended Complaint with an attached Amended Complaint which purports to assert violations of the Age Discrimination in Employment Act, 29 U.S.C. 631, et seq. ("ADEA"), fraudulent misrepresentation, and breach of contract.   Exhibit 1 hereto.

3.      Plaintiff's ADEA claim is within the original federal question jurisdiction of the United States District Court as required by 28 U.S.C. §§ 1331, 1441(b).

4.      Defendant was served with a courtesy copy of the Amended Complaint on June 14, 2007 and with the unopposed Amended Complaint which was filed with the court on June 18, 2007.   Thus, this Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b).[1]

5.      The District and Division embracing the place where such action is pending is the United States District Court for the Southern District of Florida, Miami Division. See 28 U.S.C. § 1441(a).

6.      Copies of all process, pleadings, orders and other papers or exhibits of every kind currently on file with the State Court are attached to this Notice of and Petition for Removal as Exhibit 2, as required by 28 U.S.C. § 1446(a).

7.      Pursuant to 28 U.S.C. § 1446(d), Defendant has provided written Notice of the Removal to all parties in this action and has filed a copy of this Notice of Removal in the Circuit Court of the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida.

WHEREFORE, Defendant requests that further proceedings in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, in Case No. 06-25162-

---

[1]  See Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 348-49 (1999), for discussion on the initiation of the 30-day period.

2

CA-01 be discontinued, and that this action be removed to the United States District Court for

the Southern District of Florida, Miami Division.

Dated:  June 22, 2007
         Miami, Florida

                                    Respectfully submitted,


                              By:_____
                                    Christine L. Wilson, Esq.
                                    Florida Bar No. 143588
                                    Email: *wilsonc@jacksonlewis.com*
                                    Jennifer A. Schwartz, Esq.
                                    Florida Bar No. 502431
                                    E-mail: *schwartj@jacksonlewis.com*
                                    JACKSON LEWIS LLP
                                    One Biscayne Tower, Suite 3500
                                    2 South Biscayne Boulevard
                                    Miami, Florida  33131
                                    Telephone: (305) 577-7600
                                    Facsimile:  (305) 373-4466
                                    Attorneys for Defendants
                                    STANDARD PACIFIC OF SOUTH
                                    FLORIDA, G.P. INC., and STANDARD
                                    PACIFIC CORP.

## CERTIFICATE OF SERVICE

          I hereby certify that a true and correct copy of the foregoing document was served

via U.S. mail on June 22, 2007 on all counsel or parties of record on the attached service list.


                              _____
                                    Christine L. Wilson, Esq.

## SERVICE LIST

**Leonard Chernys v. Standard Pacific of South Florida, G.P. Inc.**
**and Standard Pacific Corp.**
**United States District Court, Southern District of Florida**

Gary M. Carman, Esq.
E-mail: *gmc@carmanlawfl.com*
GARY M. CARMAN, P.A.
Mellon Financial Center, Suite 2050
1111 Brickell Avenue
Miami, Florida 33131
Telephone: 305-379-8300
Facsimile: 305-379-4404
Counsel for Plaintiff

and

Melanie E. Damian, Esq.
E-mail: *mdamian@dvllp.com*
DAMIAN & VALORI, LLP
1000 Brickell Avenue
Suite 1020
Miami, Florida 33131
Telephone: 305-371-3960
Facsimile:   305-371-3965
Co-Counsel for Plaintiff

# EXHIBIT 1

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT, IN AND FOR, MIAMI-DADE COUNTY, FLORIDA

LEONARD CHERNYS,                                     CASE NO.: 06-25162-CA-01

       Plaintiff,

vs.

STANDARD PACIFIC OF SOUTH
FLORIDA, G.P. INC., a foreign profit
corporation, and STANDARD PACIFIC
CORP., an unregistered corporation,

       Defendants.
_____/

## PLAINTIFF'S MOTION FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT

Plaintiff, Leonard Chernys, moves the Court, pursuant to Fla. R. Civ. P. 1.190, for leave to amend Plaintiff's Complaint and states:

1.     This action was commenced on November 22, 2006 when Plaintiff filed his Complaint.

2.     Plaintiff seeks to file a First Amended Complaint to properly include a count for age discrimination in violation of the Age Discrimination in Employment Act ("ADEA") and the damages suffered by Plaintiff as a result. *See* First Amended Complaint attached hereto as **Exhibit A.** Plaintiff also makes other amendments to the Complaint based on the factual developments of the case to date.

3.     Fla. R. Civ. P. 1190(a) provides that leave to amend a pleading "shall be given freely when justice so requires."

4.     This case has been pending for just over six months and only minimal discovery has been undertaken by the parties. Moreover, permitting the amended pleading attached hereto will not

*CASE NO.: 06-25162-CA-01*

unfairly prejudice any party to this action nor will it cause any undue delay. Permitting the amendments will avoid duplicative proceedings and conserve judicial resources.

5.       Plaintiff's counsel has conferred with Defendants' counsel and Defendants' counsel does not oppose the relief sought in this motion.

6.       Accordingly, in light of the liberal standard attendant to seeking leave to amend a pleading, this Court should exercise its discretion and permit the filing of the amended pleading attached hereto. *See Gerber Trade Finance, Inc. v. Bayou Dock Seafood Co., Inc.*, 917 So.2d 964 (Fla. 3rd DCA 2005).

WHEREFORE, Plaintiff respectfully request that this Court enter an order allowing Plaintiff to file his First Amended Complaint and grant such further relief as is just and proper.

Respectfully submitted,

GARY M. CARMAN, P.A
Mellon Financial Center
1111 Brickell Avenue, Suite 2050
Miami, FL 33131
Telephone: 305-379-8300
Facsimile: 305-379-4404
gmc@carmanlawfl.com

By: _____
        Gary M. Carman, P.A.
        Florida Bar No.79409

CASE NO.: *06-25162-CA-01*

> DAMIAN & VALORI, LLP.
> 1000 Brickell Avenue, Suite 1020
> Miami, FL 33131
> Telephone:  305-371-3960
> Facsimile:  305-371-3965
> mdamian@dvllp.com
>
> By: _____
>         Melanie Damian, P.A.
>         Florida Bar No. 0099392

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via

U.S. mail to: Christine L. Wilson, Esq. and Jennifer A. Schwartz, Esq., Jackson Lewis, LLP, One

Biscayne Tower, Suite 3500, Two South Biscayne Blvd., Miami, FL 33131 on this ___ day of June,

2007.

_____
        Melanie E. Damian

\\Dvserver\share\Public Documents\Chernys, Leonard v. Standard\Motion for Leave to Amend.wpd

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT, IN AND FOR,
MIAMI-DADE COUNTY, FLORIDA

LEONARD CHERNYS,                      CASE NO.: 06-25162-CA-01

       Plaintiff,

vs.

STANDARD PACIFIC OF SOUTH
FLORIDA, G.P. INC., a foreign profit
corporation, and STANDARD PACIFIC
CORP., an unregistered corporation,

       Defendants.

_____/

### FIRST AMENDED COMPLAINT

    Plaintiff, Leonard Chernys, files his First Amended Complaint and sues
Defendants, Standard Pacific of South Florida, G.P. Inc. and Standard Pacific Corp., and
alleges as follows:

    1.    This is an action for damages relating to, *inter alia*, the unlawful
termination of Plaintiff by Defendants.  The damages sought herein exceed the sum of
fifteen thousand dollars exclusive of costs, interest and attorney's fees.

    2.    Plaintiff, Leonard Chernys ("Chernys") is a resident of Miami-Dade
County, Florida and is over the age of eighteen.

    3.    Defendant, Standard Pacific of South Florida, G.P. Inc. ("Standard
Pacific") is a foreign corporation engaging in the construction of residential homes, town
homes and apartments in the Tri-County areas of Palm Beach, Broward, and its principal
place of business, Miami-Dade County, Florida.



EXHIBIT
A

*First Amended Complaint*
*Case No.: 06-25162-CA-01*

4.      Defendant, Standard Pacific Corp. is a corporation organized under the laws of the State of California, not registered in Florida, does business in Miami-Dade County, Florida and is the parent corporation of Standard Pacific of South Florida, G.P., Inc.

5.      Chernys began his career with Standard Pacific, Inc.'s predecessor, Westbrooke Communities, Inc. ("Westbrooke"), over 27 years ago.

6.      As a young man he held many positions with Westbrooke and its successors and was responsible for the development of many residential communities in South Florida.   In fact, Chernys held the General Contractor's license used by the Company to build these projects.

7.      He was recognized by his employer and peers as being a team player, an astute businessman and a person of great trust.  In fact, at Westbrooke he was one of the executives running the Company.

8.      During his years with the Company, he was constantly called upon to take a leadership role in the Company and repeatedly performed to his fullest potential, and as such the Company prospered.

9.      In April 15, 2002 Westbrooke was acquired by Standard Pacific Corporation, one of the nation's largest homebuilders, and Chernys joined Standard Pacific.

10.      At first he continued to serve as its Senior V.P. for Operations, which encompassed both purchasing and construction, then Senior Vice President of Product

2

*First Amended Complaint*
*Case No.: 06-25162-CA-01*

Development, in which he continued to give counsel and aid to both departments. As part of his duties, he was required to hire and train subordinates who were less experienced and younger than he and whom ultimately would replace him.

11.    He was part of the key management team which led the Company to great financial success. He, like other top executives, participated in a profit sharing program and received sizable distributions.

12.    In August of 2004, discussions took place between Standard Pacific and its consultant, Jim Carr ("Carr"), also the former owner of Westbrooke, regarding Chernys' age, as he was approaching sixty years old and Standard proposed his retirement.

13.    Carr dealt exclusively with Standard Pacific Corporation's Chairman Michael Cortney regarding the negotiation about Chernys' retirement and discussed and agreed that his retirement should be done in a way to allow Chernys a "soft landing".

14.    It was agreed that both Standard Pacific and Standard Pacific Corporation would pay Chernys a 2 ½ % share of the Company's pre-tax income for 2005 and 2006 and that Chernys' would thus be given a "soft landing".

15.    Carr relayed this "soft landing" proposal to Chernys. Chernys reluctantly agreed to the profit sharing proposed.

16.    Chernys continued to labor during this crucial transition period as the Sr. Vice President for Product Development, and reported to the President Diana Ibarria ("Ibarria") to reach the Company's goals they had set.

3

*First Amended Complaint*
*Case No.: 06-25162-CA-01*

17.     In 2006 Chernys served as the Company Sr. Vice President of Product Development and was responsible for the Company's move to new headquarters. This process was handled in an expeditious fashion due to the termination of the company's lease.

18.     Chernys frequently spoke to Ibarria, provided her guidance and advice and remained active within the company on a full time basis. Ibarria expressed to Chernys her appreciation for his service and that his efforts and presence were needed and appreciated.

19.     2005 was a wonderful year for Standard Pacific Corporation; they had great sales and made a substantial profit. Chernys, as part of the management team, participated in the Company's substantial profit sharing plan which was paid out in 2006. He received – as previously agreed to by Cortney and Carr - for these efforts a distribution in excess of 1 million dollars.

20.     In early 2006, prior to the receipt and/or payment of the 2005 2 ½ share of the Company's pre-tax income, he met with Ibarria and she advised him that he would not participate in the 2006 profit sharing plan as previously agreed upon, but that he could continue to work past 2006 for several more years.

21.     In reliance on these statements, despite the Company's anticipated breach of the agreement, Chernys continued his employment and expected to stay several years.

4

*First Amended Complaint*
*Case No.: 06-25162-CA-01*

22.     This decision would allow him to continue to work in a job he loved, with people who respected his leadership and talent and would serve as Senior Vice-President of Product Development. Chernys would assist and report to the Company's President.

23.     In October of 2006, Chernys was told by the Defendants to resign. He was provided the opportunity to stay on as a consultant for a year at a severely reduced rate of pay and was again denied the right to receive his share, i.e. the 2 ½ % of the pre-tax income of the Company's Florida Division, "Westbrooke Homes". A copy of the Consultant's Agreement was attached to the original Complaint as **Exhibit A**.

24.     In addition to the consultancy Agreement, the Defendants requested Chernys consult counsel and agree to sign a release waiving all claims he had against the Defendants, waive his rights and remedies under the Age Discrimination in Employment Act, Older Worker's Benefit Act and for other relief including the signing of a covenant not to compete, which clearly restricted his ability to make a living and had not been a prior criteria for employment.

25.     He was never provided a severance package, never had an exit interview, though it was represented to him by email that he would receive a package, which would be in excess of $109,000.00

26.     Chernys refused to sign the Agreement, requested the payment of his profit sharing and salary and/or continued employment. Chernys requests were denied and his employment was terminated.

5

*First Amended Complaint*
*Case No.: 06-25162-CA-01*

27.     After 27 years, Chernys was now treated as a persona non-grata and reiterated his request that the company provide him an acceptable indemnity agreement for using his license was withheld.

## COUNT I – FRAUDULENT MISREPRESENTATION

28.     Plaintiff re-alleges paragraphs 1 through 27 as stated herein.

29.     The Defendants represented to the Plaintiff that if he stayed in 2006 he would remain as a Senior Vice President of the Company and not forced to retire or resign and that his employment would continue.  It was also represented to him that he would receive a bonus.

30.     These statements were made with the purpose of attempting to induce Chernys to remain employed as long as the company needed him to transition and to waive his right to the moneys owed.  The Defendants were aware that the Plaintiff would rely on the statements to his detriment.

31.     The Defendants knew that the representations were false and known by them to be false at the time they made them.

32.     Defendants terminated the Plaintiff's employment without cause and advised him that he could not participate in the 2006 profit sharing program or remain employed.

33.     As a result of these misrepresentations, Plaintiff has suffered damages.

DAMIAN & VALORI LLP 1000 BRICKELL AVENUE, SUITE 1020, MIAMI, FLORIDA 33131 • T: 305.371.3960 • F: 305.371.3965

*First Amended Complaint*
*Case No.: 06-25162-CA-01*

WHEREFORE, Chernys demands judgment against the Defendants for damages, interest, attorney's fees, costs, interest on and judgment obtained, and other relief as the Court may deem proper.

## COUNT II – BREACH OF CONTRACT

34.    Plaintiff re-alleges paragraphs 1 through 27 as stated herein.

35.    Chernys and Defendants had an agreement that Chernys would receive 2 ½ % of pre-tax profits of the Westbrooke Homes Division for the years 2005 and 2006.

36.    Chernys, honestly, faithfully, conscientiously, in good faith and in reliance on such agreement fully discharged his duties to the Defendants and performed in accordance with his Agreement.

37.    In 2005, Defendants complied with the Agreement and he was paid the 2 ½ % of pre-tax income for the year 2005 plus his salary.

38.    The Defendants breached the Agreement by terminating Chernys, and not paying his 2006 2 ½ % pre-tax income share.

39.    By reason of the breach, Chernys has suffered damages.

40.    All conditions precedent to bring this lawsuit have been performed, waived or excused.

WHEREFORE, Chernys demands judgment against the Defendants for damages, interest, attorney's fees, costs, interest on and judgment obtained, and other relief as the Court may deem proper.

7

*First Amended Complaint*
*Case No.: 06-25162-CA-01*

## COUNT III - AGE DISCRIMINATION
### (29 U.S.C. 631 *et seq.*)

41.     Plaintiff re-alleges paragraphs 1 through 27 as stated herein.

42.     This action is brought for violations of the Age Discrimination in Employment Act, 29 U.S.C. 631 *et seq.* ("ADEA").

43.     Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) and has a received a notice of Right to Sue Letter. *See* Notice of Right to Sue attached hereto as **Exhibit B**.

44.     At all material times, Plaintiff was an "employee" and a member of a protected group within the meaning of the ADEA.

45.     At all material times, Defendants were an "employer" within the meaning of the ADEA.

46.     At all material times, Plaintiff was qualified to perform duties of his position with Defendants.

47.     During 2006, Plaintiff's employment was terminated because of his age and he was subsequently replaced by another employee (or his job duties were assumed by another employee) who was substantially younger.

48.     As a result of Defendants' wrongful termination, Plaintiff has been damaged.

49.     All conditions precedent to bringing this lawsuit have been performed, waived or excused.

8

*First Amended Complaint*
*Case No.: 06-25162-CA-01*

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against the Defendants and award Plaintiff damages for front-pay, back-pay, liquidated damages, his attorneys' fees, and grant such other and further relief as this Court deems just and proper.

<h2 style="text-align:center">JURY TRIAL DEMANDED</h2>

Plaintiff demands a trial by jury on all causes of action and issues triable as such.

Respectfully submitted,

GARY M. CARMAN, P.A.
Mellon Financial Center\
1111 Brickell Avenue, Suite 2050
Miami, FL 33131
Telephone:  305-379-8300
Facsimile:  305-379-4404
gmc@carmanlawfl.com

By: _____
      Gary M. Carman, P.A.
      Florida Bar No.79409

and

DAMIAN & VALORI, LLP.
1000 Brickell Avenue, Suite 1020
Miami, FL 33131
Telephone:  305-371-3960
Facsimile:  305-371-3965
mdamian@dvllp.com

By: _____
      Melanie Damian, P.A.
      Florida Bar No. 0099392

9

*First Amended Complaint*
*Case No.: 06-25162-CA-01*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via U.S. mail to: Christine L. Wilson, Esq. and Jennifer A. Schwartz, Esq., Jackson Lewis, LLP, One Biscayne Tower, Suite 3500, Two South Biscayne Blvd., Miami, FL 33131 on this 14 day of June, 2007.

_____
Melanie E. Damian

*\\Dvserver\share\Public Documents\Chernys, Leonard v. Standard\Amended Complaint 6.7 (ADEA).wpd*

10

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT, IN AND FOR, MIAMI-DADE COUNTY, FLORIDA

LEONARD CHERNYS,

      Plaintiff,

vs.

STANDARD PACIFIC OF SOUTH FLORIDA, G.P. INC., a foreign profit corporation, and STANDARD PACIFIC CORP., an unregistered corporation,

      Defendants.

_____/

CASE NO.: 06-25162-CA-01

## AGREED ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT

THIS CAUSE having come before the Court on Plaintiff's Motion for Leave to File a First Amended Complaint, and the Court having considered the motion, agreement of counsel, and otherwise being fully advised of the premises, hereby

ORDERS and ADJUDGES that:

Plaintiff's Motion for Leave to File its First Amended Complaint is **Granted.** Plaintiff's First Amended Complaint will be deemed filed as of the date of this Order.

DONE AND ORDERED in Chambers at Miami, FL, this _____ day of _____, 2007.

_____
HONORABLE MARY F. BARZEE
CIRCUIT COURT JUDGE

cc:   *Melanie E. Damian, Esq.*
      *Gary Carman, Esq.*
      *Christine L. Wilson, Esq.*

# EXHIBIT 2

LEONARD CHERNYS

      Plaintiff,

vs.

STANDARD PACIFIC OF SOUTH
FLORIDA, G.P. INC., and
STANDARD PACIFIC CORP.

      Defendants.

_____/

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE
COUNTY, FLORIDA

GENERAL JURISDICTION

CASE NO:   **06 - 2 5 1 6 2 CA 2 1**

**S U M M O N S**

*11/27/06*
*3:08 PP*
*#260*
*AK*

**THE STATE OF FLORIDA:**

To Each Sheriff of Said State:

**YOU ARE HEREBY COMMANDED:** to serve this Summons and a copy of the Complaint in this
action on Defendant:

      **STANDARD PACIFIC OF SOUTH FLORIDA, G.P. INC., a Corporation**

      **By serving Defendant:**

            **NRAI SERVICES, INC.**
            **2731 Executive Park Drive**
            **Suite 4**
            **Weston, FL 33331**

Each Defendant is required to serve written defenses to the Complaint or Petition on Plaintiff's attorney, to wit:

name of attorney in charge....     **GARY CARMAN, Esq.**
whose address is:               **Gary Carman, P.A.**
                       **Mellon Financial Center**
                       **1111 Brickell Avenue, Suite 2050**
                       **Miami, FL 33131**

within twenty (20) days after service of this Summons on that Defendant, exclusive of the day of service, and to file
the original of the defenses with the Clerk of this Court either before service on Plaintiff's attorney or immediately
thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in
the Complaint or Petition.

                            **NOV 2 2 2006**

**DATED ON** _____, 2006.

                                HARVEY RUVIN
                                as Clerk of Said Court

                                By:_____DASHAWN LANE
                                  as Deputy Clerk

1

IN THE CIRCUIT COURT
IN AND FOR THE ELEVENTH
JUDICIAL CIRCUIT OF
MIAMI-DADE COUNTY,
FLORIDA

LEONARD CHERNYS )
)
    Plaintiff, )
)       CIVIL DIVISION
vs. )
)
STANDARD PACIFIC OF SOUTH )    CASE NO.:
FLORIDA, G.P. INC., and )
STANDARD PACIFIC CORP. )   **06 - 2 5 1 6 2 CA 2 1**
)
    Defendants. )
)
_____)

## COMPLAINT

**The Plaintiff**, Leonard Chernys, by and through his undersigned counsel sues the

Defendants, Standard Pacific of South Florida, G.P. Inc. and Standard Pacific Corp. and

alleges as follows:

1.   This is an action for damages and other relief. The damages sought herein

    exceed the sum of fifteen thousand dollars exclusive of costs, interest and

    attorney's fees.

2.   The Plaintiff, Leonard Chernys ("Chernys") is a resident of Miami-Dade

    County, Florida and is over the age of eighteen.

3.   The Defendant, Standard Pacific of South Florida, G.P. Inc. ("Standard

    Pacific") is a Florida corporation engaging in the construction of residential

    homes, town homes and apartments in the Tri-County areas of Palm Beach,

    Broward, and its principal place of business, Miami-Dade County, Florida.

1

4.  The Defendant, Standard Pacific Corp. is a corporation organized under the laws of the State of California and does business in Miami-Dade County, Florida and is the parent corporation of Standard Pacific of South Florida, G.P., Inc.

5.  Chernys began his career with the predecessor to Standard Pacific, Inc., Westbrooke Communities, Inc. ("Westbrooke") over 27 years ago.

6.  As a young man he held many positions with "Westbrooke" and its successor, was responsible for the development of many residential communities in South Florida.  In fact, Chernys held the General Contractor's license used by the Company to build these projects.

7.  He was recognized by his employer and peers as being a team player, an astute businessman and a person of great trust.  In fact, at Westbrooke Communities, he was one of the executives running the Company.

8.  During his years with the Company, he was constantly called upon to take a leadership role in the Company and repeatedly performed to his fullest potential, and as such the Company prospered.

9.  In April 15, 2002 Westbrooke was acquired by Standard Pacific Corporation, one of the nation's largest homebuilders, and Chernys joined Standard Pacific.

10. At first he continued to serve as its Senior V.P. for Operations, which encompassed both purchasing and construction, then Senior Vice President of Product Development, in which he continued to give counsel and aid to both departments.  As part of his duties, he was required to hire and train

2

subordinates who were less experienced and younger than he and whom
ultimately would replace him.

11. He was part of the key management team which led the Company to great
financial success. He, like other top executives, participated in a profit
sharing program and received sizable distributions.

12. In August of 2004, discussions took place between Standard Pacific and its
consultant, Jim Carr ("Carr"), the former owner of Westbrooke regarding
Chernys' age, as he was approaching sixty years old and Standard was
discussing his retirement.

13. Carr dealt exclusively with Standard Pacific Corporation's Chairman Michael
Cortney regarding the negotiation about Chernys' retirement and discussed
and agreed that his retirement should be done in a way to allow Chernys a
"soft landing".

14. It was agreed that both Standard Pacific and Standard Pacific Corporation
would allow Chernys to participate in the Company's profit sharing plan
through the end of December, 2006 and that Chernys' retirement would thus
give him a "soft landing".

15. Carr relayed this "soft landing" proposal to Chernys. He understood, though
agreed reluctantly, that he would leave the Company at the end of 2006.

16. This conversation took place in July of 2004; Chernys continued to labor and
as the Sr. Vice President for Product Development, and assistant to the
President Diana Ibarria ("Ibarria") to reach the goals they had set.

3

17. He participated in the Company's profit sharing, feeling robust; being in good health, he chose not to dwell on the "planned soft landing" but continued to work. He expressed this to Ibarria and she accepted this decision gratefully.

18. In 2006 he served as the Company Sr. Vice President of Product Development and was responsible for the Company's move to new headquarters. This process was handled in an expeditious fashion due to the termination of the company's lease.

19. Chernys was in a state of denial concerning his forced retirement, and labored hard and long for the Company and its projects. He frequently spoke to Ibarria, provided her guidance and advice and remained active within the company. She valued his service and continually assured him that would be the case.

20. 2005 was a wonderful year for Standard Pacific Corporation; they had great sales and made a substantial profit. Chernys, as part of the management team, participated in the Company's substantial profit sharing plan. He received – as previously agreed to by Cortney and Carr - for these efforts a distribution in excess of 1 million dollars.

21. In early 2006, prior to the receipt of the 2005 profit sharing distribution, he met with Ibarria and she advised him that he would not participate in the 2006 profit sharing plan as previously agreed upon, but that he could continue to work past 2006 for several more years.

22. In reliance on these statements, he agreed to work in 2006 for a substantially reduced salary and not contest the breach of the agreement as to the profit

4

sharing plan, believing that he would be employed with the company for several years to come; and negotiated a $200,000 salary with a $50,000 bonus.

23. This decision would allow him to continue to work in a job he loved, with people who respected his leadership and talent and would serve as Senior Vice-President of Product Development and would assist the Company's President.

24. As the year progressed, the parent Company, Standard Pacific Corporation decided that Chernys was now expendable. He was sixty years old, was being paid a substantial salary and since an economic decline in the housing market was on the horizon, instead of using his skills to develop new products for the market, they chose to terminate him.

25. In October of 2006, Chernys was advised by the Defendants to resign. He was provided the opportunity to stay on as a consultant for a year at a severely reduced rate of pay and was denied the right to participate in this year's profit sharing despite his previous understandings with the Defendants. A copy of the consultant's Agreement is attached as Exhibit A.

26. In addition to the consultancy Agreement, the Defendants requested Chernys consult counsel and agree to sign a release waiving all claims he had against the Defendants, waive his rights and remedies under the Age Discrimination in Employment Act, Older Worker's Benefit Act and for other relief including the signing of a covenant not to compete, which clearly restricted his ability to make a living and had not been a prior criteria for employment.

5

27. He was never provided a severance package, never had an exit interview, though it was represented to him by email that the package would be forthcoming and would be in excess of $100,000.00

28. Chernys refused to sign the Agreement, requested the payment of his profit sharing and salary and/or continued employment and was terminated.

29. Chernys was now treated as a persona non-grata and his request that the company provide him an acceptable indemnity agreement for using his license was withheld.

## COUNT I – DECLARATORY RELIEF

30. The Plaintiff, Chernys, realleges and reavers the allegations of paragraphs 1 through 31 as is set forth herein.

31. This is an action for Declaratory relief pursuant to sections 86.011 and 86.061 of the Florida Statutes and damages in excess of $15,000.00

32. The Plaintiff Chernys and the Defendant Pacific agreed in 2004, that Chernys would participate in the executive profit sharing program for the year 2004, 2005 and 2006. The Contract was oral in nature but fully performed in 2004 and 2005.

33. In the beginning of 2006, the Plaintiff and Defendants had certain contractual decisions in which it was agreed that the Plaintiff would waive his right to the profit sharing plan for continued long term employment with the company.

34. Despite these representations, the Defendants breached the Agreement with Chernys and terminated him.

6

35. Thereafter Chernys demanded that the Defendants honor the terms of their agreement and either restore his right to the profit sharing program for 2006, pay the balance of his 2006 salary, or continue his employment.

36. The Defendants refused and contends that it is not obligated to pay him this year's profit sharing moneys or the remainder of his salary and bonus.

37. The Plaintiff contends that Defendants are obligated to either pay him for his profit sharing interest or continue his employment and a dispute has occurred.

38. There is an actual, practical, and present need for declaratory and supplemental relief as Plaintiff is in doubt of its rights under the Agreement and there is a bona fide, actual, justicable controversy existing between the parties and a practical and present need for a declaratory judgment and supplementary relief exists.

39. A declaration is the most effective remedy to resolve the controversy.

WHEREFORE, Plaintiff Chernys requests the Court to:

A.   Enter a declaratory judgment, adjudging and declaring his right to participate in the 2006 profit sharing plan of the Defendants,

B.   Grant such supplemental relief as may be proper including the awarding of costs, interest and attorney's fees.

C.   Require the Defendants to execute an acceptable Indemnification Agreement.

D.   Award lost wages, salary and benefits.

## COUNT II – FRAUDULENT MISREPRESENTATION

7

40. The Plaintiff, Chernys realleges and reavers the allegations of paragraphs 1 through 31 above as is stated herein.

41. The Defendants represented to the Plaintiff that if he agreed to waive his right to participate in the 2006 profit sharing program he would remain as a Senior Vice President of the Company and not forced to retire or resign and that his employment would continue.

42. That these statements were made with the purpose of including the Plaintiff to waive his right to the moneys and the Defendants were aware that the Plaintiff would rely on it to his detriment.

43. The Defendants knew that the representations were false and known by them to be false at the time they made them.

44. Defendants terminated the Plaintiff's employment and advised him that he could not participate in the 2006 profit sharing program.

45. As a result of these misrepresentations, the Plaintiff suffered damages.

WHEREFORE, Chernys demands judgment against the Defendants for damages, interest, attorney's fees, costs, interest on and judgment obtained, and other relief as the Court may deem proper.

## COUNT III – BREACH OF CONTRACT

46. The Plaintiff reavers and realleges the allegations in paragraphs 1 through 31 as is set forth herein.

8

47. Following the Defendants' representation that he would participate in the profit sharing plan for 2004, 2005 and 2006, Chernys continued his employment with the Defendants and continued to discharge his duties.

48. Chernys, honestly, faithfully, conscientiously and in good faith discharged his duties to the Defendants and performed in accordance with his Agreement.

49. The Defendants in 2004 and 2005 complied with the Agreement and he was paid his profit share interest and salary.

50. The Defendants have breached the Agreement by terminating Chernys, and his interest in the 2006 profit sharing program.

51. By reason of the breach, Chernys has suffered damages.

52. All conditions precedent to bring this lawsuit have been complied with.

WHEREFORE, Chernys demands judgment against the Defendants for damages, interest, attorney's fees, costs, interest on and judgment obtained, and other relief as the Court may deem proper.


## COUNT IV -- WRONGFUL TERMINATION

53. The Plaintiff Chernys realleges and reavers the allegations of paragraphs 1 through 31 as set forth herein.

54. Following the Agreement reached with the Defendants in February of 2006, the Plaintiff continued to work and discharging his duties.

55. Chernys, honestly, faithfully, conscientiously and in good faith discharged his duties to the Defendants.

9

56. Chernys' termination of employment was, without cause and in violation of the Agreement he reached with the Defendants.

57. Chernys at all times remained ready, willing and able to continue to perform his duties under the Agreement.

58. By reason of the Defendants' wrongful termination of the Contract, the Plaintiff has been damaged.

WHEREFORE, Chernys demands judgment from the Defendants for damages, interest, attorney's fees, costs and other relief as the Court may deem proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all causes of action and issues triable as such.

Respectfully submitted,

Gary M. Carman
1111 Brickell Avenue,
Suite 2050
Miami, Florida 33131
Phone: 305-379-8300
Fax: 305-379-4404
Florida Bar No. 179409

By: _____

10

**EXHIBIT A**

## CONSULTING AGREEMENT

This Consulting Agreement (this "**Agreement**") is made effective as of October 5,2006 (the "**Effective Date**"), by and between Standard Pacific of South Florida, a Florida general partnership (the "**Company**") and Leonard Chernys (the "**Consultant**").

WHEREAS, Consultant served as the Senior Vice President-Operations of the Company;

WHEREAS, concurrently herewith, Consultant is resigning from his position as Senior Vice President-Operations of the Company and his employment with the Company and its affiliates is terminating;

WHEREAS, the Company desires to continue to take advantage of Consultant's skills through the engagement of Consultant for a transition period; and

WHEREAS, Consultant desires to accept such engagement, all as more particularly described below.

NOW, THEREFORE, in consideration of the foregoing premises and the covenants contained in this Agreement, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Company and the Consultant agree as follows:

1.    <u>Services</u>.

(a)    During his term of engagement with the Company, Consultant shall assist the Company and its affiliates (as requested by the Company, up to a full-time basis) with such matters related to the operation of the Company's business in South Florida as the Company may request (collectively, the "**Services**"). Without limiting the generality of the foregoing, Company may, in its discretion, request that Consultant provide the following Services: (i) make recommendations with regard to on-site safety, (ii) provide the Company with input on the design of new product, (iii) provide analysis of standard and upgraded features in the South Florida area, (iv) provide input and assist in architectural details, site development, and common area features, and (v) assist in value engineering existing product.    It is anticipated that Consultant will primarily perform the Services from the office that he will maintain in his home, but will, from time to time, be required to travel to the offices of the Company in the South Florida Area.  Consultant does not expect and the Company is not obligated to supply office space, secretarial assistance, or other assistance or support services to Consultant in connection with his performance of such Services.

(b)    In performing the Services, Consultant shall use his best efforts to promote the interests of the Company and its affiliates and to perform the Services in a professional manner and in accordance with applicable laws.  The methods, details and means of performing the Services shall be within the discretion of the Consultant so long as they are consistent with recognized business and professional practices.  Consultant acknowledges he is not authorized, and agrees he shall not, make any representations or warranties to, or enter into any contract or agreement with, any third parties on behalf of the Company, unless the Company expressly pre-authorizes such conduct specifically and in writing.  In addition, Consultant shall not use the Company's name, trademark or logo in any publication, advertisement, display or article without

the prior written approval of the Company (which may be withheld in the Company's sole and absolute discretion).

(c)     Consultant represents to the Company that Consultant has no outstanding commitments inconsistent with any of the terms of this Agreement or the duties or responsibilities to be rendered by her hereunder.

(d)     Consultant may not represent, perform services for, or be employed by any other persons or companies during the term of this Agreement and will not engage in any conduct which is injurious to the Company or its affiliates, monetarily or otherwise. Without limiting the foregoing, during the term of this Agreement, Consultant will not, directly or indirectly: (i) compete with the Company, either for himself or as a member of a partnership or as a stockholder, investor, owner, officer or director of a company or other entity, or as an employee, agent, associate or consultant of any person, partnership, corporation or other entity, in any business in competition with the Company, including, without limitation, any aspect of the Company's business in the South Florida area, (ii) solicit or induce or attempt to induce (A) any employee of the Company to leave his or her employment; (B) customers of the Company to become customers of any other entity or person engaged in a business similar to or in competition with the Company; or (C) suppliers, contractors or agents of the Company to become suppliers or contractors of any other entity or person engaged in a business similar to or in competition with the Company.

2.     Term and Termination.  The term of this Agreement shall commence on the Effective Date and end on the first anniversary of the Effective Date (the "Term"), provided, that, this Agreement may be terminated by either party for any reason or no reason upon thirty (30) days written notice.   In addition, this Agreement may be terminated immediately by the Company if Consultant takes any action or fails to take any action that: (a) constitutes negligence or willful misconduct by Consultant, (b) constitutes a breach of this Agreement, or (c) is beyond the scope of Consultant's authority hereunder and not otherwise authorized in writing by the Company. This Agreement will automatically terminate upon Consultant's death or permanent disability.  If this Agreement is terminated as contemplated by this Section 2, Consultant shall not be entitled to receive any compensation following the termination date and shall have no further rights hereunder, except that Consultant shall be entitled to receive such pro-rated Compensation (as defined below) and expense reimbursement as shall have accrued as of such date.

3.     Compensation and Benefits.  For all services rendered by Consultant pursuant to this Agreement, the Company shall compensate Consultant as set forth below.  Consultant has no right to any specific compensation or benefits other than as expressly set forth herein or required pursuant to applicable law.

(a)     Compensation.   The Company shall pay to Consultant a monthly consulting fee equal to $8,000.00. The Compensation will be paid monthly in accordance with the Company's customary consultant payment schedule and policies, and will be prorated based upon the number of days Consultant is engaged by the Company pursuant to this Agreement for any partial month.  Consultant shall keep complete, accurate and detailed descriptions of the actual time spent by Consultant on any matter, as requested by the Company.

(b)   Benefits.  Consultant is not entitled to any employment rights or benefits from the Company, including, without limitation, workers' compensation, disability insurance, retirement or 401(k) plan, stock options, medical reimbursement or other fringe benefit plan, overtime pay, unemployment compensation, vacation or sick pay.

(c)   Expenses.  In accordance with the general policies and practices of the Company in effect from time to time, Consultant shall be entitled to reimbursement by the Company for his ordinary and necessary out-of-pocket business expenses incurred in the performance of his duties under this Agreement if supported by adequate and reasonable documentation as required by the Company in accordance with its usual practices, but in no event will Consultant be reimbursed for his general overhead expenses.

4.   Liability for Taxes.  Consultant will be responsible for the payment of all federal, state, local or other taxes payable with respect to all amounts paid to the Consultant under this Agreement including without limitation, any unemployment insurance tax, federal, state and foreign income taxes, federal Social Security (FICA) payments, and disability insurance taxes; provided that, if the Company is determined to be liable for collection or remittance of any such taxes, Consultant will immediately reimburse the Company for all such payments made by the Company.  Consultant shall make all payments of all applicable taxes when the same may become due and payable with respect to compensation earned under this Agreement.  Consultant shall indemnify, defend and hold harmless the Company, its officers, directors, agents, employees and the successors or heirs of any of them, from any and all losses, costs and expense arising out of any failure of the Consultant to make any payment of taxes required to be made by Consultant under this paragraph.

5.   Nondisclosure, Non-Disparagement and Indemnification.

(a)   Confidential Information.  Consultant hereby acknowledges that in connection with his former employment with the Company and during the term of his engagement with the Company hereunder he was and will be exposed to, and obtained or will obtain, Confidential Information of the Company and its affiliates.   Consultant further acknowledges that such Confidential Information is unique, valuable and deemed proprietary by the Company.  For purposes of this Agreement, "Confidential Information," shall mean all trade secrets, proprietary or confidential knowledge, data or other information of the Company, its affiliates, and any third parties having a business relationship with the Company or its affiliates, including, without limitation, all of the following information (whether or not reduced to writing, whether or not patentable or protected by copyright and whether or not such information has been or is made, developed or compiled by Consultant or otherwise has been or is made available to her and whether obtained or learned by Consultant during the Term or prior to the Term):  plans, drawings, designs, programs, research, business plans, budgets, strategic plans regarding the present and future business and operations, financial information, procedures, lists of customers, prospects and suppliers, source and object codes, employee lists, skills and compensation of employees.  The following shall not be considered Confidential Information: (i) information disclosed on a non-confidential basis to third parties by the Company (but not by Consultant or any other Person in violation of this Agreement or any similar agreement), (ii) information released from confidential treatment by written consent of the Company and

3

approved by the Company's Board of Directors, and (iii) information lawfully available to the general public.

(b)    Use of Confidential Information.  Except as otherwise required by law, while engaged by the Company and at all times thereafter, Consultant shall hold in the strictest confidence all Confidential Information, and shall not, directly or indirectly, duplicate, sell, lease, commercialize, disclose or otherwise divulge to any Person any portion of the Confidential Information or use any Confidential Information for his own benefit or profit or allow any Person, other than the Company, to use or otherwise gain access to any Confidential Information.

(c)    Non-Disparagement.  Consultant shall not publish, republish, comment upon, or otherwise disseminate: (i) any claims made by him against the Company; (ii) any other comments suggesting or otherwise accusing the Company or its agents or employees of any act of discrimination, misconduct, other negative behavior, or any breach of any agreements. Nothing in this provision shall be construed, however, to prevent Consultant from giving testimony pursuant to a subpoena appearing valid on its face.

(d)    Equitable Relief.  The covenants set forth in Sections 1(d), 5(a), (b) and (c) are a material part of the bargain between the parties and Consultant acknowledges that any breach of these provisions would cause irreparable harm to the Company.  It is the intention of the parties that these provisions be enforced to the fullest extent permissible under Florida law. Thus, if any provision of these sections shall be adjudicated to be invalid or unenforceable because its duration or scope is excessive, or the subject matter is excessively broad, such duration, scope or subject matter shall be reduced or modified to the extent necessary to permit the enforcement of such covenants to the broadest extent permissible under Florida law.  Upon any breach, or threatened breach, by Consultant of any one or more of these covenants, the Company shall be entitled to preliminary and permanent injunctive relief, with or without an allowance for damages, as well as an accounting of all such earnings, profits and other benefits arising from such breach, which remedies shall be cumulative and in addition to any other remedies to which the Company may be entitled at law or in equity.  The covenants set forth in Sections 1(d), 5(a), (b) and (c) are in addition to any rights the Company may have in law or at equity, and the expiration date set forth in the nondisclosure and nonsolicitation covenants shall not be deemed to be a waiver by the Company of any such rights in law or in equity.

(e)    Indemnification.  Consultant shall indemnify, defend, and hold harmless the Company and its affiliates, and the officers, directors, employees, agents, and shareholders of any of them, from and against any and all claims, losses, damages, liabilities, obligations, assessments, penalties and interest, demands, actions and expenses, whether direct or indirect, known or unknown, absolute or contingent (including, without limitation, settlement costs and any legal, accounting and other expenses for investigating or defending any actions or threatened actions) reasonably incurred by any such indemnitee, arising out of or in connection with, any breach of any covenant made by the Consultant with respect to this Agreement.

6.    Memoranda, Notes, Records, Etc.

(a)    All memoranda, notes, records, software, customer lists or other documents (including, without limitation, Confidential Information) made or compiled by

4

Consultant or otherwise made available to him (whether before or after the date hereof, including when Consultant was an employee of the Company) concerning the business of the Company or its affiliates shall be the Company's property and shall be delivered to the Company upon the expiration or termination of Consultant's engagement with the Company or at any other time upon request by the Company, and Consultant shall retain no copies of those documents.

(b)     Consultant will promptly make full written disclosure to the Company of, will hold in trust for the sole right and benefit of the Company, and subject to any exceptions under applicable law, hereby assigns to the Company or its designee all of Consultant's right, title, and interest in and to, any and all inventions, original works of authorship, developments, concepts, ideas, discoveries, improvements and trade secrets, whether or not patentable or registrable under copyright or similar laws, that Consultant solely or jointly conceived or developed or reduced to practice during the time Consultant was an employee of the Company or that Consultant may solely or jointly conceive or develop or reduce to practice, or cause to be conceived or developed or reduced to practice, during the period of time Consultant is engaged by the Company pursuant to the terms hereof. To the extent permitted by applicable law, rule or regulation, all original works of authorship that are made by Consultant (solely or jointly with others) within the scope of Consultant's engagement by the Company and that are protectable by copyright are "works for hire," as that term is defined in the United States Copyright Act. Consultant shall never at any time have or claim any right, title or interest in any material or matter of any sort prepared for or used in connection with the business or promotion of the Company or its affiliates.

7.     Release.    In consideration of the Company entering into this Agreement, Consultant on behalf of himself and his agents, successors and assigns, is entering into the release letter attached hereto as Exhibit A (the "Release Agreement"). If, as permitted by law, Consultant revokes the Release Agreement, Consultant acknowledges that, notwithstanding anything contained to the contrary herein, this Agreement shall immediately terminate and Consultant shall not be entitled to any compensation hereunder, irrespective of whether such compensation is attributable to the time period before or after termination.

8.     Miscellaneous.

(a)     Relationship of Parties.    In rendering services pursuant to this Agreement, Consultant is acting as an independent contractor and not as an employee or agent of the Company. As an independent contractor, Consultant shall have no authority, express or implied, to commit or obligate the Company in any manner whatsoever, except as specifically authorized from time to time in writing by an authorized representative of the Company, which authorization may be general or specific. Nothing contained in this Agreement shall be construed or applied to create a partnership or joint venture, or an employer/employee or master/servant relationship.

(b)     Non-Delegation of Duties.    This Agreement is a personal services contract and Consultant may not delegate the performance of any of his obligations or duties hereunder, or assign any rights hereunder, without the prior written consent of the Company. Any such purported delegation or assignment in the absence of such written consent shall be null and void with no force or effect. Notwithstanding the foregoing, nothing herein shall prevent Consultant

from delegating ministerial tasks to assistants of the type that are normally assigned by executives to assistants.

        (c)    <u>Binding Effect</u>.   The Company may assign its rights, duties and obligations to a direct or indirect wholly owned subsidiary of Standard Pacific Corp.  This Agreement shall be binding on and inure to the benefit of the parties hereto and their respective heirs, representatives, successors and permitted assigns and any receiver, trustee in bankruptcy or representative of the creditors of each such Person.

        (d)    <u>Survival of Covenants</u>.  Notwithstanding anything contained in this Agreement, if Consultant's engagement with the Company is terminated pursuant to <u>Section 4</u> hereof, the covenants and agreements of Consultant contained in <u>Sections 1(c), 3(e), 4, 5, 6, 7</u> and <u>8</u>, and the covenants of the Company contained in <u>Section 8</u> shall survive any such termination and shall not lapse.

        (e)    <u>Rules of Construction</u>.

        (i)    This Agreement shall be governed by and construed in accordance with the laws of the State of Florida, without regard to its conflicts-of-laws provisions.  Captions contained in this Agreement are for convenience of reference only and shall not be considered or referred to in resolving questions of interpretation with respect to this Agreement.

        (ii)    If any provision of this Agreement is held to be illegal, invalid or unenforceable under any present or future law, and if the rights or obligations of any party hereto under this Agreement will not be materially and adversely affected thereby, (A) such provision will be fully severable, (B) this Agreement will be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part hereof, (C) the remaining provisions of this Agreement will remain in full force and effect and will not be affected by the illegal, invalid or unenforceable provision or by its severance herefrom, and (D) in lieu of such illegal, invalid or unenforceable provision, there will be added automatically as a part of this Agreement a legal, valid and enforceable provision as similar in terms to such illegal, invalid or unenforceable provision as may be possible.

        (iii)    Unless the context clearly requires otherwise, "or" is not exclusive, and "includes" means "includes, but is not limited to."

        (iv)    The parties have participated jointly in the negotiation and drafting of this Agreement.  If an ambiguity or question of intent or interpretation arises under this Agreement, this Agreement shall be construed as drafted jointly by the parties and no presumption or burden of proof shall arise favoring or disfavoring one party by virtue of the authorship of any of the provisions of this Agreement.

        (f)    <u>Entire Agreement; Amendment; Waiver</u>.  This Agreement constitutes the entire agreement among the parties hereto with respect to the subject matter contained herein and supersedes all prior and contemporaneous agreements and understandings, oral or written, express or implied, between the parties with

respect to such subject matter and any express or implied employment or other agreements between Consultant and the Company or any affiliate or predecessor of the Company (and Consultant shall not be entitled to any further payments or other consideration under such agreements, including salary and bonus, if any). Neither this Agreement nor any provision hereof may be waived, modified, amended, changed, discharged or terminated, except by an agreement in writing signed by the party against whom enforcement of any such waiver, modification, change, amendment, discharge or termination is sought. No right or power of any party shall be deemed to have been waived unless such party expressly waives such right or power in writing. No waiver by any party given hereunder shall operate or be construed as a waiver by such party with respect to any other or continuing or subsequent breach.

(g)    Notices.    All notices, requests, demands and other communications hereunder shall be in writing and shall be deemed given upon personal delivery or three business days after being mailed by certified or registered mail, postage prepaid, return receipt requested, or one business day after being sent via a nationally recognized overnight courier service if overnight courier service is requested from such service or upon receipt of electronic or other confirmation of transmission if sent via facsimile, to the parties, their successors in interest or their assignees at the following addresses and facsimile numbers, or at such other addresses or facsimile numbers as the parties may designate by written notice in accordance with this Section 8(g):

> If to Consultant:    Leonard Chernys
>                      10 Edgewater Dr. #5
>                      Coral Gables, FL 33133
>
> If to the Company:   Standard Pacific of South Florida
>                      c/o Standard Pacific Corp.
>                      15326 Alton Parkway
>                      Irvine, California 92618-2338
>                      Attention: Clay A. Halvorsen

(h)    Attorneys' Fees and Costs.    If any party to this Agreement brings any action, arbitration or other proceeding, at law or in equity, to enforce this Agreement or on account of any breach of this Agreement, the prevailing party shall be entitled to recover from the non-prevailing party the reasonable attorneys' fees and costs of the prevailing party incurred in such action.

(i)    Arbitration.    Any dispute regarding the application, interpretation or breach of this Agreement, or with respect to any aspect of Consultant's engagement with the Company hereunder, shall be resolved by final and binding arbitration before a single arbitrator who is a retired judge with the American Arbitration Association (the "AAA"). This subsection (i) does not apply to any claims which are expressly prohibited by law from being subject to arbitration under this Agreement. Any resolution, opinion or order of the AAA may

be entered as a judgment in a court of competent jurisdiction. This Agreement is admissible in any proceeding to enforce its terms.

       (j)    <u>Counterparts</u>. This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement.

       (k)    <u>Legal Representation</u>. Consultant acknowledges that he has been given the opportunity to consult with and has consulted with counsel of his own choosing in connection with the negotiation and execution of this Agreement.

       IN WITNESS WHEREOF, the parties hereto have executed this Agreement to be effective as of the Effective Date.

**CONSULTANT:**

_____
    Leonard Chernys

**COMPANY:**
STANDARD PACIFIC OF
SOUTH FLORIDA,
a Florida general partnership

By:  Standard Pacific of South Florida, Inc.
Its:  Managing Partner

By:_____
Name:_____
Title:_____

## Exhibit A

### Release Agreement

Leonard Chernys
10 Edgewater Dr. #5
Coral Gables, Florida 33133

Dear Leonard:

This letter sets forth the agreement (the **"Agreement"**) that Standard Pacific of South Florida, a Florida general partnership, and its affiliates (collectively, the **"Company"**) and you have reached concerning the release required by the Consulting Agreement you and the Company are entering into concurrent herewith (the **"Consulting Agreement"**). This Agreement and the benefits and payments described in it are conditioned upon your complying with the terms and conditions set forth in this Agreement, including your execution and delivery to the Company of this Agreement and the release contained herein. All capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Consulting Agreement.

1.  <u>Employment Status.</u> You acknowledge that you resigned your employment with the Company effective as of the close of business on September 29, 2005, and that of such date you are no longer an employee of the Company.

2.  <u>Payments.</u> In exchange for entering into the release contained herein, the Company has agreed to enter into the Consulting Agreement with you.

3.  <u>Confidentiality.</u> Except as required by law, you and the Company agree to keep the terms of this Agreement strictly confidential and agree not to disclose its terms to anyone other than your respective legal or financial advisors; provided, further, to the extent to which information contained in this Agreement is disclosed to any of them, you or the Company (as applicable) will likewise obtain from the person to whom such information is disclosed the promise not to disclose this information unless required to do so by law.

4.  <u>No Claims.</u> You represent and warrant that you have not instituted any complaints, charges, lawsuits or other proceedings against the Company (including any of its subsidiaries, affiliates or current or former employees, directors or officers) with any governmental agency, court, arbitration agency or tribunal, and that you will not file any complaint, charge, lawsuit or other proceeding against the Company or any subsidiary, affiliate or current or former employee, director or officer at any time hereafter for any act or event occurring prior to the date of this Agreement, other than claims that are not released by you under Section 6 of this Agreement. Should any agency or court assume jurisdiction of any complaint, charge, or lawsuit against the Company, its subsidiaries or current or former employees, directors or officers on your behalf, you agree to request that such agency or court dismiss the matter with prejudice.

5.  <u>Release.</u> To the extent not prohibited by applicable law, you hereby forever release and discharge the Company and any and all present and former direct or indirect parents (including, but not limited to, Standard Pacific Corp.), subsidiaries, divisions, affiliated companies and successors in interest, and the shareholders, directors, officers, heirs, predecessors in interest, assigns, agents, employees, attorneys and representatives of each of them, from any and all causes of action, actions, judgments, liens, indebtedness,

predecessors in interest, assigns, agents, employees, attorneys and representatives of each of them, from any and all causes of action, actions, judgments, liens, indebtedness, damages, losses, claims, complaints (including, but not limited to, those arising under the Age Discrimination in Employment Act of 1967), liabilities, and demands arising on or before the date of this Agreement, including but not limited to (1) those arising from or attributable in any way to your employment or other relationships with the Company and/or the termination thereof, (2) any claim for salary, bonus, severance pay, or other compensation, or (3) any claim for non-vested benefits under any employee benefit plan, whether or not heretofore brought before any state or federal court or before any state or federal agency or other governmental entity. You further agree that this release applies to any claims for damages incurred at any time after the date of this Agreement because of alleged acts or omissions (which occurred on or before the date of this Agreement) of the Company or any and all present and former subsidiaries, divisions and affiliated companies and successors in interest, and the shareholders, officers, directors, heirs, predecessors in interest, assigns, agents, employees, attorneys and representatives of each of them. However, you do not release the Company (or any and all present and former subsidiaries, divisions and affiliated companies and successors in interest, and the shareholders, officers, directors, heirs, predecessors in interest, assigns, agents, employees, attorneys and representatives of each of them) from any of its obligations pursuant to, and this Agreement shall not affect any rights that you may have which arise under the terms of this Agreement, or with respect to vested benefits under any stock option agreement or 401(k) plan with Company or any of its affiliates. This release shall also not apply to claims which arise from events that occur after your execution of this Agreement.

      6.    <u>Release Language Required for OWBPA/ADEA</u>.  The release described in Section 5 includes any and all claims, rights or remedies arising under the Age Discrimination in Employment Act (ADEA) and the Older Workers Benefit Protection Act (OWBPA) other than claims concerning the Company's compliance with the OWBPA. In compliance with the ADEA and OWBPA:

      (1) you shall be permitted to take up to 21 days to consider the provisions of this Agreement prior to signing it (and you acknowledge the Company has given you 21 days to consider it);

      (2) you understand that you are entitled to revoke this Agreement within seven days after its execution, that this Agreement is not effective or enforceable until the revocation period has expired, and that if you choose to revoke this Agreement the Consulting Agreement will be immediately terminated and, notwithstanding any provision contained therein to the contrary, you shall have no right to receive any payment thereunder. Any such revocation shall be in writing and shall be sent by facsimile and registered mail to the Company, c/o Standard Pacific Corp., Attn: Clay A. Halvorsen, General Counsel, 15326 Alton Parkway, Irvine, CA 92618-2338, facsimile number (949) 789-1608. This Agreement will not be effective or enforceable until the revocation period has expired;

      (3) you acknowledge and agree that you have been advised in writing to consult with an attorney prior to signing this Agreement; and

(4) This release is not intended to preclude you from filing a charge or complaint challenging the validity of this release of ADEA claims with the Equal Employment Opportunity Commission.

7.    Advice of Counsel.  You represent and agree that this Agreement serves as our written notice to you to advise you to discuss this Agreement with your private attorney, you fully understand your right to discuss, and that the Company has advised you to discuss, all aspects of this Agreement with your private attorney, that you have carefully read and fully understand all the provisions of the Agreement, that you understand its final and binding effect, that you are competent to sign this Agreement, and that you are voluntarily entering into this Agreement.

8.    Acknowledgment.  You represent and agree that in executing this Agreement you rely solely upon your own judgment, belief and knowledge, and the advice and recommendations of any independently selected counsel, concerning the nature, extent and duration of your rights and claims.  You acknowledge that no other individual has made any promise, representation or warranty, express or implied, not contained in this Agreement, to induce you to execute this Agreement.  You further acknowledge that you are not executing this Agreement in reliance on any promise, representation, or warranty not contained in this Agreement.

9.    Binding on Successors and Assigns.  This Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Company and shall inure to the benefit of and be binding upon your heirs, executors, administrators, successors and assigns.

10.   Arbitration.  You and the Company acknowledge and agree that any dispute regarding the application, interpretation or breach of this Agreement will be subject to final and binding arbitration before a single arbitrator who is a retired judge with the American Arbitration Association (the "AAA") and in accordance with AAA's National Rules for the Resolution of Employment Disputes.  Attorneys' fees, costs and damages (where appropriate) shall be awarded to the prevailing party in any dispute, and any resolution, opinion or order of the arbitrator may be entered as a judgment of a court of competent jurisdiction.  This Agreement shall be admissible in any proceeding to enforce its terms.

11.   Severability.  Should any provision of this Agreement be found, held, declared, determined, or deemed by any arbitrator or court of competent jurisdiction to be void, illegal, invalid or unenforceable under any applicable statute or controlling law, the legality, validity, and enforceability of the remaining provisions will not be affected and the illegal, invalid, or unenforceable provision will be deemed not to be a part of the Agreement.

12.   Governing Law.  This Agreement shall be construed and interpreted in accordance with Florida law.

13.   Entire Agreement.  This Agreement contains the entire agreement and understanding between you and the Company regarding the matters set forth herein and replaces all prior agreements, arrangements and understandings, written or oral and neither you nor

the Company shall be bound or liable for any representation, promise or inducement not contained in this Agreement. This Agreement cannot be amended, modified, supplemented, or altered, except by written amendment or supplement signed by you and the Company.

Please sign below and return this letter to me to indicate your agreement to these terms.

Sincerely,


Dianna Ibarria
    Standard Pacific of South Florida

13

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE
COUNTY, FLORIDA

CIVIL DIVISION

CASE NO.: 06-25162CA21

LEONARD CHERNYS                    )
                                   )
              Plaintiff,           )
                                   )
vs.                                )
                                   )
STANDARD PACIFIC OF SOUTH          )
FLORIDA, G.P. INC., and STANDARD   )
PACIFIC CORP.                      )
                                   )
              Defendants.          )
                                   )

ORIGINAL
FILED

DEC 1 8 2006

RUVIN
CLERK

## DEFENDANT'S ANSWER AND DEFENSES
## TO PLAINTIFF'S COMPLAINT

Defendants, STANDARD PACIFIC OF SOUTH FLORIDA G.P. INC.,

("Defendant"), by and through its undersigned counsel, files its Answer and Defenses to

Plaintiff's Complaint, as follows:

1.     Defendant admits that Plaintiff seeks damages in excess of

$15,000.00, but denies that Plaintiff is entitled to any relief in this action.

2.     Defendant is without knowledge regarding the allegations

contained in paragraph 2 of the Complaint and, therefore, denies the same.

3.     Defendant admits that it is a Florida corporation with its principal

place of business in Miami-Dade County, Florida, but denies the remaining allegations

contained in paragraph 3 of the Complaint.

CASE NO. 06-25162CA21

4.      Defendant admits the allegations contained in paragraph 4 of the Complaint.

5.      Defendant admits that Plaintiff worked for Westbrooke Communities, Inc., but denies the remaining allegations contained in paragraph 5 of the Complaint.

6.      Defendant denies the allegations contained in paragraph 6 of the Complaint.

7.      Defendant denies the allegations contained in paragraph 7 of the Complaint.

8.      Defendant denies the allegations contained in paragraph 8 of the Complaint.

9.      Defendant admits that Standard Pacific Corp. acquired Westbrooke in 2002, but denies the remaining allegations contained in paragraph 9 of the Complaint.

10.     Defendant admits that Plaintiff held the positions of Senior V.P. for Operations and then Senior V.P. of Product Development, but denies the remaining allegations contained in paragraph 10 of the Complaint.

11.     Defendant denies the allegations contained in paragraph 11 of the Complaint.

12.     Defendant denies the allegations contained in paragraph 12 of the Complaint.

13.     Defendant denies the allegations contained in paragraph 13 of the Complaint.

CASE NO. 06-25162CA21

14.   Defendant denies the allegations contained in paragraph 14 of the Complaint.

15.   Defendant denies the allegations contained in paragraph 15 of the Complaint.

16.   Defendant denies the allegations contained in paragraph 16 of the Complaint.

17.   Defendant denies the allegations contained in paragraph 17 of the Complaint.

18.   Defendants admit that Plaintiff held the title Senior V.P. of Product Development in 2006, but denies the remaining allegations contained in paragraph 18 of the Complaint.

19.   Defendant denies the allegations contained in paragraph 19 of the Complaint.

20.   Defendant admits that Plaintiff participated in the Profit Sharing Plan for 2005, but denies the remaining allegations contained in paragraph 20 of the Complaint.

21.   Defendant admits that Ibarria advised Plaintiff that he would not participate in the 2006 Profit Sharing Plan, but denies the remaining allegations contained in paragraph 21 of the Complaint.

22.   Defendant admits that Plaintiff understood and agreed that he would not participate in the 2006 Profit Sharing Plan and negotiated a salary, but denies the remaining allegations contained in paragraph 22 of the Complaint.

CASE NO. 06-25162CA21

23.   Defendant denies the allegations contained in paragraph 23 of the Complaint.

24.   Defendant denies the allegations contained in paragraph 24 of the Complaint.

25.   Defendant admits that Plaintiff was given the opportunity to work as a consultant for Standard Pacific of South Florida, but denies the remaining allegations contained in paragraph 25 of the Complaint.

26.   Defendant denies the allegations contained in paragraph 26 of the Complaint, and moves to strike this paragraph because any such communications would represent a compromise or offer to compromise a claim under Florida Statute Section 90.408.

27.   Defendant admits that Plaintiff rejected the benefits that were offered to him, but denies the remaining allegations contained in paragraph 27 of the Complaint.

28.   Defendant denies the allegations contained in paragraph 28 of the Complaint.

29.   Defendant denies the allegations contained in paragraph 29 of the Complaint.

## I – DECLARATORY RELIEF

30.   Defendant realleges and incorporates its responses to paragraphs 1 through 29 of the Complaint as though set forth fully herein.

31.   Defendant avers that Plaintiff seeks declaratory relief, but denies that he is entitled to such relief in this action.

32.    Defendant denies the allegations contained in paragraph 32 of the Complaint.

33.    Defendant denies the allegations contained in paragraph 33 of the Complaint.

34.    Defendant denies the allegations contained in paragraph 34 of the Complaint.

35.    Defendant denies the allegations contained in paragraph 35 of the Complaint.

36.    Defendant denies the allegations contained in paragraph 36 of the Complaint.

37.    Defendant denies the allegations contained in paragraph 37 of the Complaint.

38.    Defendant denies the allegations contained in paragraph 38 of the Complaint.

39.    Defendant denies the allegations contained in paragraph 39 of the Complaint.

Defendant denies that Plaintiff is entitled to any of the relief sought in the *ad damnum* clause in Count I of the Complaint.

## II – FRAUDULENT MISREPRESENTATION

40.    Defendant realleges and incorporates its responses to paragraphs 1 through 31 of the Complaint as though set forth fully herein.

41.    Defendant denies the allegations contained in paragraph 41 of the Complaint.

CASE NO. 06-25162CA21

42.     Defendant denies the allegations contained in paragraph 42 of the Complaint.

43.     Defendant denies the allegations contained in paragraph 43 of the Complaint.

44.     Defendant admits that Plaintiff was laid off due to down turn in business and further admits that several months earlier the parties agreed he would not participate in the 2006 profit sharing program.

45.     Defendant denies the allegations contained in paragraph 45 of the Complaint.

Defendant denies that Plaintiff is entitled to any of the relief sought in the *ad damnum* clause contained in Count II of the Complaint.

## III - BREACH OF CONTRACT

46.     Defendant realleges and incorporates its responses to paragraphs 1 through 31 of the Complaint as though set forth fully herein.

47.     Defendant denies the allegations contained in paragraph 47 of the Complaint.

48.     Defendant denies the allegations contained in paragraph 48 of the Complaint.

49.     Defendant admits that Plaintiff participated in the profit sharing program in 2004 and 2005, but denies the remaining allegations contained in paragraph 49 of the Complaint.

50.     Defendant denies the allegations contained in paragraph 50 of the Complaint.

CASE NO. 06-25162CA21

51.   Defendant denies the allegations contained in paragraph 51 of the Complaint.

52.   Defendant denies the allegations contained in paragraph 52 of the Complaint.

Defendant denies that Plaintiff is entitled to any of the relief sought in the *ad damnum* clause contained in Count III of the Compliant.

## IV – WRONGFUL TERMINATION

53.   Defendant realleges and incorporates its responses to paragraphs 1 through 31 of the Complaint as though set forth fully herein.

54.   Defendant denies the allegations contained in paragraph 54 of the Complaint.

55.   Defendant denies the allegations contained in paragraph 55 of the Complaint.

56.   Defendant denies the allegations contained in paragraph 56 of the Complaint.

57.   Defendant denies the allegations contained in paragraph 57 of the Complaint.

58.   Defendant denies the allegations contained in paragraph 58 of the Complaint.

Defendant denies that Plaintiff is entitled to any of the relief requested in the *ad damnum* clause contained in Count IV of the Complaint, and admits that Plaintiff seeks trial by jury on all issues so triable.

'O. 06-25162-CA-21

## JURY TRIAL DEMANDED

Defendant admits that Plaintiff seeks a trial by jury on all issues so triable.

## STATEMENT OF DEFENSES

### First Defense

59.    Plaintiff's claims are barred, in whole or in part, by the applicable statute of limitation(s).

### Second Defense

60.    Plaintiff's claims are barred because Defendant is not a proper party to this action.

### Third Defense

61.    Plaintiff's claims are barred by the statute of frauds.

### Fourth Defense

62.    Plaintiff's claims are barred, in whole or in part, by the economic loss rule.

### Fifth Defense

63.    Plaintiff's claims are barred because Jim Carr lacked actual, apparent and/or implied authority to make the alleged promises/statements at issue in this action.

### Sixth Defense

64.    Plaintiff's claims are barred because there is no consideration flowing to Defendant to support Plaintiff's claims and/or the alleged promises at issue.

-8-

CASE NO. 06-25162CA21

**Eighth Defense**

66.    To the extent that there was a contract between the parties, Plaintiff is not entitled to any damages because he materially breached the terms of the agreement thus relieving Defendant of any further obligation on its part under such agreement.

**Ninth Defense**

67.    Plaintiff has failed to state the cause of action for which relief can be granted.

WHEREFORE, Defendant, STANDARD PACIFIC OF SOUTH FLORIDA, G.P. INC., hereby requests that this Honorable Court dismiss Plaintiff's Complaint in its entirety, and that it grant all other appropriate relief to Defendant, including costs of attorneys' fees associated with this action.

Dated: December 18, 2006   Respectfully,
       Miami, Florida

By: _____
Patrick G. DeBlasio, III, Esq.
Florida Bar No. 871737
deblasip@jacksonlewis.com
Jennifer Schwartz, Esq.
Florida Bar No. 502431
schwartzj@jacksonlewis.com
JACKSON LEWIS LLP
One Biscayne Tower
2 South Biscayne Boulevard -Suite 3500
Miami, FL 33131
Telephone: (305) 577-7600
Facsimile: (305) 373-4466
ATTORNEYS FOR DEFENDANTS

CASE NO. 06-25162CA21

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document has been furnished via U.S. Mail, on this 18th day of December, 2006, to: Gary M. Carman, Esq., 1111 Brickell Avenue, Suite 2050, Miami, FL 33131

Patrick G. DeBlasio, III, Esq.

-10-

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 06-25162-CA-21

LEONARD CHERNYS            )
                          )
        Plaintiff,         )
                          )
vs.                       )
                          )
STANDARD PACIFIC OF SOUTH  )
FLORIDA, G.P. INC., and STANDARD )
PACIFIC CORP.             )
                          )
        Defendants.        )
                          )

THE ORIGINAL
FILED ON:

JAN 22 2007

IN THE OFFICE OF
CIRCUIT COURT DADE CO. FL.

## DEFENDANT STANDARD PACIFIC CORP.'S ANSWER AND STATEMENT OF DEFENSES TO PLAINTIFF'S COMPLAINT

Defendant, STANDARD PACIFIC CORP., by and through its undersigned counsel, files its Answer and Affirmative Defenses to Plaintiff's Complaint, as follows:

1.      Defendant admits that Plaintiff seeks damages in excess of $15,000.00, but denies that Plaintiff is entitled to any relief in this action.

2.      Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 2 of the Complaint and, therefore, those allegations are denied, except Defendant admits Plaintiff is over the age of eighteen.

3.      Defendant admits that Standard Pacific of South Florida, G.P. is a Florida corporation with its principal place of business in Miami-Dade County, Florida, but denies the remaining allegations contained in paragraph 3 of the Complaint.

C.   NO. 06-25162-CA-21

4.       Defendant admits the allegations contained in paragraph 4 of the Complaint.

5.       Defendant admits that Plaintiff worked for Westbrooke Communities, Inc., but denies the remaining allegations contained in paragraph 5 of the Complaint.

6.       Defendant denies the allegations contained in paragraph 6 of the Complaint.

7.       Defendant denies the allegations contained in paragraph 7 of the Complaint.

8.       Defendant denies the allegations contained in paragraph 8 of the Complaint.

9.       Defendant admits that it was acquired by Westbrooke in 2002, but denies the remaining allegations contained in paragraph 9 of the Complaint.

10.      Defendant admits that Plaintiff held the positions of Senior V.P. for Operations and then Senior V.P. of Product Development, but denies the remaining allegations contained in paragraph 10 of the Complaint.

11.      Defendant denies the allegations contained in paragraph 11 of the Complaint.

12.      Defendant denies the allegations contained in paragraph 12 of the Complaint.

13.      Defendant denies the allegations contained in paragraph 13 of the Complaint.

CASE NO. 06-25162-CA-21

14.   Defendant denies the allegations contained in paragraph 14 of the Complaint.

15.   Defendant denies the allegations contained in paragraph 15 of the Complaint.

16.   Defendant denies the allegations contained in paragraph 16 of the Complaint.

17.   Defendant denies the allegations contained in paragraph 17 of the Complaint.

18.   Defendant admits that Plaintiff held the title Senior V.P. of Product Development in 2006, but denies the remaining allegations contained in paragraph 18 of the Complaint.

19.   Defendant denies the allegations contained in paragraph 19 of the Complaint.

20.   Defendant admits that Plaintiff participated in the Profit Sharing Plan for 2005, but denies the remaining allegations contained in paragraph 20 of the Complaint.

21.   Defendant admits that Ibarria advised Plaintiff that he would not participate in the 2006 Profit Sharing Plan, but denies the remaining allegations contained in paragraph 21 of the Complaint.

22.   Defendant admits that Plaintiff understood and agreed that he would not participate in the 2006 Profit Sharing Plan and negotiated a salary, but denies the remaining allegations contained in paragraph 22 of the Complaint.

CASE NO. 06-25162-CA-21

23.     Defendant denies the allegations contained in paragraph 23 of the Complaint.

24.     Defendant denies the allegations contained in paragraph 24 of the Complaint.

25.     Defendant admits that Plaintiff was given the opportunity to work as a consultant for Standard Pacific of South Florida and that Exhibit "A" to the Complaint appears to be a true and correct copy of the Consultant Agreement offered to him, but denies the remaining allegations contained in paragraph 25 of the Complaint.

26.     Defendant denies the allegations contained in paragraph 26 of the Complaint, and moves to strike this paragraph because any such communications would represent a compromise or offer to compromise a claim under Florida Statute Section 90.408.

27.     Defendant admits that Plaintiff rejected the benefits that were offered to him, but denies the remaining allegations contained in paragraph 27 of the Complaint.

28.     Defendant denies the allegations contained in paragraph 28 of the Complaint.

29.     Defendant denies the allegations contained in paragraph 29 of the Complaint.

## COUNT I – DECLARATORY RELIEF

30.     Defendant realleges and incorporates its responses to paragraphs 1 through 29 of the Complaint as though set forth fully herein.

NO. 06-25162-CA-21

31.     Defendant avers that Plaintiff seeks declaratory relief, but denies that he is entitled to such relief in this action.

32.     Defendant denies the allegations contained in paragraph 32 of the Complaint.

33.     Defendant denies the allegations contained in paragraph 33 of the Complaint.

34.     Defendant denies the allegations contained in paragraph 34 of the Complaint.

35.     Defendant denies the allegations contained in paragraph 35 of the Complaint.

36.     Defendant denies the allegations contained in paragraph 36 of the Complaint.

37.     Defendant denies the allegations contained in paragraph 37 of the Complaint.

38.     Defendant denies the allegations contained in paragraph 38 of the Complaint.

39.     Defendant denies the allegations contained in paragraph 39 of the Complaint.

Defendant denies that Plaintiff is entitled to any of the relief sought in the *ad damnum* clause in Count I of the Complaint.

## COUNT II – FRAUDULENT MISREPRESENTATION

40.     Defendant realleges and incorporates its responses to paragraphs 1 through 31 of the Complaint as though set forth fully herein.

NO. 06-25162-CA-21

41.   Defendant denies the allegations contained in paragraph 41 of the Complaint.

42.   Defendant denies the allegations contained in paragraph 42 of the Complaint.

43.   Defendant denies the allegations contained in paragraph 43 of the Complaint.

44.   Defendant admits that Plaintiff was laid off due to a down turn in business and further admits that several months earlier the parties agreed Plaintiff would not participate in the 2006 profit sharing program.

45.   Defendant denies the allegations contained in paragraph 45 of the Complaint.

Defendant denies that Plaintiff is entitled to any of the relief sought in the *ad damnum* clause contained in Count II of the Complaint.

## COUNT III - BREACH OF CONTRACT

46.   Defendant realleges and incorporate its responses to paragraphs 1 through 31 of the Complaint as though set forth fully herein.

47.   Defendant denies the allegations contained in paragraph 47 of the Complaint.

48.   Defendant denies the allegations contained in paragraph 48 of the Complaint.

49.   Defendant admits that Plaintiff received a profit share distribution in 2004 and 2005, but denies the remaining allegations contained in paragraph 49 of the Complaint.

NO. 06-25162-CA-21

50.     Defendant denies the allegations contained in paragraph 50 of the Complaint.

51.     Defendant denies the allegations contained in paragraph 51 of the Complaint.

52.     Defendant denies the allegations contained in paragraph 52 of the Complaint.

Defendant denies that Plaintiff is entitled to any of the relief sought in the *ad damnum* clause contained in Count III of the Complaint.

## COUNT IV – WRONGFUL TERMINATION

53.     Defendant realleges and incorporates its responses to paragraphs 1 through 31 of the Complaint as though set forth fully herein.

54.     Defendant denies the allegations contained in paragraph 54 of the Complaint.

55.     Defendant denies the allegations contained in paragraph 55 of the Complaint.

56.     Defendant denies the allegations contained in paragraph 56 of the Complaint.

57.     Defendant denies the allegations contained in paragraph 57 of the Complaint.

58.     Defendant denies the allegations contained in paragraph 58 of the Complaint.

Defendant denies that Plaintiff is entitled to any of the relief requested in the *ad damnum* clause contained in Count IV of the Complaint.

C      NO. 06-25162-CA-21

## JURY TRIAL DEMANDED

Defendant admits that Plaintiff seeks a trial by jury on all issues so triable.

## STATEMENT OF DEFENSES

### First Defense

59.     Plaintiff's claims are barred, in whole or in part, by the applicable statute of limitation(s).

### Second Defense

60.     Plaintiff's claims are barred because Defendant is not a proper party to this action.

### Third Defense

61.     Plaintiff's claims are barred by the statute of frauds.

### Fourth Defense

62.     Plaintiff's claims are barred, in whole or in part, by the economic loss rule.

### Fifth Defense

63.     Plaintiff's claims are barred because Jim Carr lacked actual, apparent and/or implied authority to make the alleged promises/statements at issue in this action.

### Sixth Defense

64.     Plaintiff's claims are barred because there is no consideration flowing to Defendant to support Plaintiff's claims and/or the alleged promises at issue.

### Seventh Defense

65.     Plaintiff's claims are barred on the grounds of indefiniteness and lack of mutuality of obligation, and the alleged promises at issue are otherwise illusory.

### Eighth Defense

66.     Plaintiff's claims are barred because he was employed at-will.

### Ninth Defense

67.     To the extent that there was a contract between the parties, Plaintiff is not entitled to any damages because he materially breached the terms of the agreement thus relieving Defendant of any further obligation on its part under such agreement.

### Tenth Defense

68.     Plaintiff has failed to state a cause of action for which relief can be granted.

**WHEREFORE**, Defendant, STANDARD PACIFIC CORP., respectfully requests that this Honorable Court:

(a) dismiss Plaintiff's Complaint with prejudice;

(b) deny Plaintiff's demands and prayers for relief;

(c) grant such other and further relief as this Court deems just and proper.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

NO. 06-25162-CA-21

Dated this 2 day of January 2007.

Respectfully submitted,

JACKSON LEWIS LLP
One Biscayne Tower, Suite 3500
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 577-7600
Facsimile: (305) 373-4466

By: _____

Christine L. Wilson, Esq.
Florida Bar No. 143588
E-mail: *wilsonc@jacksonlewis.com*
Jennifer A. Schwartz, Esq.
E-mail: *schwartj@jacksonlewis.com*
Florida Bar No. 502431
ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing was provided via U.S. Mail to **Gary M. Carman, Esq.**, 1111 Brickell Avenue, Suite 2050, Miami, Florida 33131 this 2 day of January 2007.

_____

Jennifer A. Schwartz, Esq.

-10-

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.: 06-25162-CA-21

LEONARD CHERNYS )
)
      Plaintiff, )
)
v. )
)
STANDARD PACIFIC OF SOUTH )
FLORIDA, G.P. INC., and STANDARD )
PACIFIC CORP., )
)
      Defendants. )
)

ORIGINAL FILED
JAN 3 1 2007
HARVEY RUVIN
Clerk

## NOTICE OF UNAVAILABILITY

PLEASE TAKE NOTICE that Christine L. Wilson, Esq., counsel for Defendants, will be unavailable from May 21, 2007 through June 1, 2007 as she will be out of the country on vacation, and requests the Court and parties not to schedule hearings, trials, depositions and/or file any pleadings that require a response or reply during this time period.

Dated: January 29, 2007
Miami, Florida

Respectfully submitted,

By: _____
Christine L. Wilson, Esq.
Florida Bar No. 143588
JACKSON LEWIS LLP
One Biscayne Tower, Suite 3500
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 577-7600
Facsimile: (305) 373-4466
ATTORNEYS FOR DEFENDANTS

CASE NO.: 06-25162-CA-21

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been provided via facsimile and U.S. mail to Gary M. Carman, Esq., GARY CARMAN, P.A., counsel for Plaintiff, Mellon Financial Center, Suite 2050, 1111 Brickell Avenue, Miami, Florida 33131 the _29_ day of January 2007.

_____

Christine L. Wilson, Esq.

IN THE CIRCUIT COURT OF THE ELEVENTH
JUDICIAL CIRCUIT, IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 06-25162-CA-21

GENERAL JURISDICTION

LEONARD CHERNYS

      Plaintiff,

Vs.

STANDARD PACIFIC OF SOUTH
FLORIDA, G.P., INC., and STANDARD
PACIFIC CORP.

      Defendants.

_____/

## NOTICE OF READINESS FOR BENCH TRIAL

      TO: Jennifer A. Schwartz, Jackson Lewis, LLP., Attorney for Defendant, One

Biscayne Tower, Suite 3500, 2 South Biscayne Boulevard, Miami, Florida 33131; and

      Christine L. Wilson, Attorney for Defendant, One Biscayne Tower, Suite 3500, 2

South Biscayne Boulevard, Miami, Florida 33131.

      YOU ARE NOTIFIED THAT:

1.  The matters in this action are at issue.

2.  This action is ready to be set for trial.

3.  The trial is a jury trial.

4.  The trial is expected to last 4-5 days.

**WHEREFORE**, the undersigned respectfully requests that the Court issue an order setting this matter for jury trial and certifies that a copy if the foregoing has been furnished to the persons listed above by mail on this _30_ day of January, 2006.

Gary M. Carman, P.A.
Attorney for Plaintiff
1111 Brickell Avenue
Suite 2050
Miami, FL 33131
Ph. 305-379-8300
Fax 305-379-4404
Florida Bar No. 179409

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA
CIVIL DIVISION

CASE NO.:  06-25162-CA-21

LEONARD CHERNYS                    )
                                   )
              Plaintiff,           )
                                   )
vs.                                )
                                   )
STANDARD PACIFIC OF SOUTH          )
FLORIDA, G.P. INC., and STANDARD   )
PACIFIC CORP.                      )
                                   )
              Defendants.          )
                                   )

## DEFENDANTS' MOTION TO TRANSFER TO COMPLEX BUSINESS LITIGATION SECTION 40

Defendants, STANDARD PACIFIC OF SOUTH FLORIDA G.P. INC. and STANDARD PACIFIC CORP., by and through the undersigned counsel, and pursuant to Administrative Order 06-40, move this Court for the entry of an order transferring this case to the Complex Business Litigation Section 40 within the General Jurisdiction Division of the Eleventh Judicial Circuit, and as grounds state as follows:

1.    On or about November 22, 2006, the Plaintiff filed a four-count Complaint alleging that Defendants: (1) broke an oral agreement with Plaintiff to pay him a profit sharing distribution for the year 2006 estimated to be more than one million dollars ($1,000,000.00); and (2) fraudulently induced Plaintiff to "waive his right" to receive a profit sharing distribution for the year 2006 in exchange for continued employment.    Plaintiff seeks declaratory relief and

CASE NO. 06-25162-CA-21

damages for breach of contract, fraudulent misrepresentation and wrongful termination.  A true and correct copy of the Complaint is attached hereto as Exhibit "A."

2.      Pursuant to Section 2(a) of Administrative Order 06-40, this case is subject to the Complex Business Litigation Section because: (1) the matter in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00); and (2) it involves a breach of contract action and a common law violation where the violation is alleged to arise out of a business dealing.

3.      A trial date has not been set in this matter.

4.      Accordingly, this matter meets all of the criteria for transfer to the Complex Business Litigation Section 40.

**WHEREFORE**, for the foregoing reasons, Defendants respectfully request this Honorable Court enter an Order transferring this matter to the Complex Business Litigation Section 40, in addition to such other and further relief as this Court deems just and proper.

Dated this 13 day of February 2007.

Respectfully submitted,

JACKSON LEWIS LLP
One Biscayne Tower, Suite 3500
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone:  (305) 577-7600
Facsimile:    (305) 373-4466


By: _____
Christine L. Wilson, Esq.
Florida Bar No. 143588
E-mail:  *wilsonc@jacksonlewis.com*
Jennifer A. Schwartz, Esq.
E-mail:  *schwartj@jacksonlewis.com*
Florida Bar No. 502431
ATTORNEYS FOR DEFENDANTS

-2-

CASE NO. 06-25162-CA-21

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing was provided via U.S. Mail to **Gary M. Carman, Esq.**, 1111 Brickell Avenue, Suite 2050, Miami, Florida 33131 this 13 day of February 2007.

Jennifer A. Schwartz, Esq.

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA
CIVIL DIVISION

CASE NO.:  06-25162-CA-21

LEONARD CHERNYS                            )
                                           )
                 Plaintiff,                )
                                           )
vs.                                        )
                                           )
STANDARD PACIFIC OF SOUTH                  )
FLORIDA, G.P. INC., and STANDARD           )
PACIFIC CORP.                              )
                                           )
                 Defendants.               )
                                           )
_____

## NOTICE OF HEARING

TO:   Gary Carman, Esq.
      Gary M. Carman, P.A.
      Mellon Financial Center
      1111 Brickell Avenue, Suite 2050
      Miami, FL 33131


          PLEASE TAKE NOTICE that the above-captioned cause will be called up for hearing

on: **Defendant's Motion To Transfer To Complex Business Litigation Section 40**

            **BEFORE:**   Honorable Stuart M. Simons
            **AT:**       Dade County Courthouse
                          73 West Flagler Street, Rm. 405
                          Miami, Florida 33128
            **DATE:**     Tuesday, February 27, 2007
            **TIME:**     9:45 a.m.

or as soon thereafter as it may be heard.

In accordance with the Americans With Disability Act of 1990, persons needing a special accommodation to participate in this proceeding should contact the Court ADA Coordinator/Ellis D. Pettigrew, no later than 7 days prior to the proceeding at (305) 375-2006 (voice) or (305) 375-2007 (TDD).

CASE NO.: 06-25162-CA-21

> Movant's counsel certifies that a bona fide effort to agree on or to narrow the issues raised by the noticed motion has been made with opposing counsel.

Dated this ⟍3 day of February 2007.

Respectfully submitted,

By: _____

Christine L. Wilson, Esq.
Florida Bar No. 143588
E-mail: *wilsonc@jacksonlewis.com*
Jennifer A. Schwartz, Esq.
E-mail: *schwartj@jacksonlewis.com*
Florida Bar No. 502431
JACKSON LEWIS LLP
One Biscayne Tower, Suite 3500
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 577-7600
Facsimile:  (305) 373-4466

ATTORNEYS FOR DEFENDANTS

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing was provided via U.S. Mail to **Gary M. Carman, Esq.**, 1111 Brickell Avenue, Suite 2050, Miami, Florida 33131 this ⟍3 day of February 2007.

_____
Jennifer A. Schwartz, Esq.

- 2 -

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 06-25162-CA-21

LEONARD CHERNYS        )
                       )
        Plaintiff,     )
                       )
vs.                    )
                       )
STANDARD PACIFIC OF SOUTH )
FLORIDA, G.P. INC., and STANDARD )
PACIFIC CORP.          )
                       )
        Defendants.    )
                       )

THE ORIGINAL
FILED ON:

FEB 22 2007

IN THE OFFICE OF
CIRCUIT COURT DADE CO. FL

## DEFENDANTS' MOTION FOR A PROTECTIVE ORDER REGARDING THE DEPOSITIONS OF OUT OF STATE WITNESSES AND INCORPORATED MEMORANDUM OF LAW

Defendants, STANDARD PACIFIC OF SOUTH FLORIDA G.P. INC. and STANDARD PACIFIC CORP. (collectively "Defendants"), by and through their undersigned counsel, and pursuant to Fla. R. Civ. P. 1.280(c), hereby file this Motion for a Protective Order Regarding the Deposition of Out of State Witnesses and Incorporated Memorandum of Law. In support thereof, Defendants state as follows:

1.      On February 12, 2007, counsel for Defendants sent a letter to Plaintiff's counsel providing dates for the depositions of the employees Plaintiff requested to depose. A true and correct copy of the correspondence is attached hereto as Exhibit "A."

2.      On February 15, 2007, Plaintiff unilaterally set the depositions of employees Michael Cortney (President of Standard Pacific Corp.), Bruce Dixon (Regional President of Standard Pacific Corp.), and Heather Breidenthal (Director of Human Resources at

CASE NO. 06-25162-CA-21

Standard Pacific Corp.) at the office of Plaintiff's attorney in Miami, Florida.  See Deposition

Notices attached hereto as composite Exhibit "B."

> 3.     All three witnesses are employed by Standard Pacific Corp., which has its

corporate headquarters in Irvine, California.

> 4.     Plaintiff is aware that Mr. Cortney and Ms. Breidenthal live and work in

California, and Mr. Dickson lives and works in Texas.

> 5.     Florida law is clear that a nonresident corporate defendant need not

produce a nonresident corporate officer in Florida.   Moreover, Florida law is clear that a

defendant will not be required to travel a great distance and incur substantial expenses to be

deposed by the plaintiff, unless the defendant is seeking affirmative relief.

> 6.     Defendants are not seeking affirmative relief in this action.  Thus,

Defendants move for a protective order.

## MEMORANDUM OF LAW

## ARGUMENT AND CITATION OF AUTHORITY

Florida law is clear that a defendant "will not be required to travel a great

distance and incur substantial expenses to be deposed by the plaintiff, unless the defendant is

seeking affirmative relief.  See Fortune Ins. Co. v. Santelli, 621 So. 2d 546, 547 (Fla. 3d DCA

1993) (citing Kaufman v. Kaufman, 63 So. 2d 196 (Fla. 1952).   "[U]nder Florida law, a

nonresident corporate defendant need not produce a nonresident corporate officer in Florida."

Fortune Ins. Co., 621 So. 2d at 547; Besco Equip. Co. v. Golden Loaf Bakery, Inc., 458 So. 2d

330 (Fla. 5th DCA 1984) (out of state corporate defendants do not have to produce nonresident

corporate officers in Florida unless the corporation is seeking affirmative relief); Madax Int'l

Corp. v. Delcher Intercontinental Moving Serv., Inc., 342 So. 2d 1082 (Fla. 2d DCA 1977)

CASE NO. 06-25162-CA-21

(same). "Absent extraordinary circumstances . . ., the deposition of a nonresident officer of a nonresident corporate defendant which is not seeking affirmative relief should be taken at the deponent's place of residence." Id. at 1084 (citing Godshall v. Hessen, 227 So. 2d 506 (Fla. 3d DCA 1969)

      Finally, to the extent Plaintiff argues Ms. Breidenthal is not a corporate officer, Florida law is clear that a nonparty witness cannot be compelled to attend a deposition which is noticed outside of the county where she resides, is employed or transacts business in person. See Ormond Beach First Nat'l Bank v. J.M. Montgomery Roofing Co., Inc. 189 So. 2d 239 (Fla. 1st DCA 1966); Kaufman, 63 So. 2d at 196. Requiring Standard Pacific to produce these non-resident employees in Florida when they work and reside out of state constitutes an undue burden and expense. Fortune Ins., 621 So. 2d at 547. Accordingly, Defendants request this Court grant this Motion and enter a protective order as to the depositions of Michael Cortney, Bruce Dickson and Heather Breidenthal.

## CONCLUSION

      **WHEREFORE**, for the foregoing reasons, Defendants respectfully request this Honorable Court: (1) grant this Motion; (2) enter a Protective Order as to the depositions of Michael Cortney, Bruce Dickson and Heather Breidenthal; and (3) grant such other and further relief as this Court deems just and proper.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

CASE NO. 06-25162-CA-21

Dated this 22 day of February 2007.

Respectfully submitted,

JACKSON LEWIS LLP
One Biscayne Tower, Suite 3500
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 577-7600
Facsimile: (305) 373-4466

By:_____
Christine L. Wilson, Esq.
Florida Bar No. 143588
E-mail: *wilsonc@jacksonlewis.com*
Jennifer A. Schwartz, Esq.
E-mail: *schwartj@jacksonlewis.com*
Florida Bar No. 502431
ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing was provided via facsimile and U.S. Mail to **Gary M. Carman, Esq.**, 1111 Brickell Avenue, Suite 2050, Miami, Florida 33131 this 22 day of February 2007.

Jennifer A. Schwartz, Esq.

- 4 -

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA
CIVIL DIVISION

CASE NO.: 06-25162-CA-21

LEONARD CHERNYS                    )
                                   )
         Plaintiff,                )
                                   )
vs.                                )
                                   )
STANDARD PACIFIC OF SOUTH          )
FLORIDA, G.P. INC., and STANDARD   )
PACIFIC CORP.                      )
                                   )
         Defendants.               )
                                   )
_____    )

## NOTICE OF HEARING

**TO:**   Gary Carman, Esq.
          Gary M. Carman, P.A.
          Mellon Financial Center
          1111 Brickell Avenue, Suite 2050
          Miami, FL 33131

THE ORIGINAL
FILED ON:

FEB 22 2007

IN THE OFFICE OF
CIRCUIT COURT DADE CO. FL

        PLEASE TAKE NOTICE that the above-captioned cause will be called up for hearing

on: **Defendant's Motion for a Protective Order Regarding the Depositions of Out of State**

**Witnesses and Incorporated Memorandum of Law**

            **BEFORE:**   Honorable Mary R. Barzee
            **AT:**       Dade County Courthouse
                          73 West Flagler Street, Rm. 817
                          Miami, Florida 33128
            **DATE:**     Thursday, March 1, 2007
            **TIME:**     8:30 a.m.

or as soon thereafter as it may be heard.

CASE NO.: 06-25162-CA-21

In accordance with the Americans With Disability Act of 1990, persons needing a special accommodation to participate in this proceeding should contact the Court ADA Coordinator/Ellis D. Pettigrew, no later than 7 days prior to the proceeding at (305) 375-2006 (voice) or (305) 375-2007 (TDD).

Movant's counsel certifies that a bona fide effort to agree on or to narrow the issues raised by the noticed motion has been made with opposing counsel.

Dated this ͻday of February 2007.

Respectfully submitted,

By: _____

Christine L. Wilson, Esq.
Florida Bar No. 143588
E-mail: *wilsonc@jacksonlewis.com*
Jennifer A. Schwartz, Esq.
E-mail: *schwartj@jacksonlewis.com*
Florida Bar No. 502431
JACKSON LEWIS LLP
One Biscayne Tower, Suite 3500
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 577-7600
Facsimile:  (305) 373-4466

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing was provided via U.S. Mail to **Gary M. Carman, Esq.**, 1111 Brickell Avenue, Suite 2050, Miami, Florida 33131 this ͻͻ day of February 2007.

_____

Jennifer A. Schwartz, Esq.

- 2 -

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN
AND FOR DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION
Judicial Section: 21
Case No. 06-25162-CA-01

LEONARD CHERNYS,

    Plaintiff(s),

v.

STANDARD PACIFIC OF SOUTH
FLORIDA, G.P., INC., et al.,

    Defendant(s).

_____/

**UNIFORM ORDER SETTING CAUSE FOR
JURY TRIAL, PRE-TRIAL CONFERENCE
AND PRE-TRIAL INSTRUCTIONS**

    THIS CAUSE is set for Jury Trial before the undersigned Judge in a courtroom assigned for his/her use in the Dade County Courthouse, 73 West Flagler Street, Miami, Florida, for the **two (2) week** period commencing **September 10, 2007**, or as soon thereafter as the same may be heard.

    ALL ATTORNEYS, pursuant to Rule 1.200 F.R.Civ.P., are directed to appear before the undersigned Judge, at the Dade County Courthouse, for a **(Pre-Trial Conference) Call of the Calendar** at **01:30 PM** on **Thursday, August 30, 2007**. All attorneys should be thoroughly familiar with the cause and prepared to consider and determine such matters as are set forth in Rule 1.200(b). **Failure to appear** as directed or to otherwise strictly comply with the terms of this Order may result in sanctions, including dismissing the action, striking the pleadings, limiting proof or witnesses or taking any other appropriate action.  It is further

    **ORDERED AND ADJUDGED** as follows:

    1.    The parties shall do all things reasonable and necessary to assure the availability of their witnesses for the **entire** trial period or to otherwise preserve their testimony for trial as provided by the Florida Rules of Civil Procedure.  See Rules 1.300 and 1.460 F.R.Civ.P. and Rule 2.085 of the Florida Rules of Judicial Administration.

    2.    The following shall be done no later than **sixty (60) days** prior to the Monday of the trial period set forth above:
    (a)    Parties shall furnish opposing counsel with the names and addresses of all expert witnesses to be called at trial and all information regarding expert testimony that is required by Rule 1.280(4)(A).  Each party is limited to one expert per specialty.  No other expert testimony shall be permitted at trial.  Information furnished pursuant to this paragraph shall be timely filed with the Clerk of the Court.

    3.    The following shall be done no later than **forty-five (45) days** prior to the Monday of the trial period set forth above:
    (a)    Parties shall furnish opposing counsel with a written list containing the names and addresses of all non-expert witnesses (impeachment, rebuttal or otherwise) intended to be called at

ORDER SETTING JURY TRIAL, PRE-TRIAL CONFERENCE AND PRE-TRIAL INSTRUCTIONS - Case No.: 06-25162-CA-01
Docname: gj_jury_trial

Page 1 of 2

trial and only those witnesses listed shall be permitted to testify. A written list identifying all exhibits intended to be offered shall also be furnished to opposing counsel and only those exhibits may be offered in evidence. Copies of witness and exhibit lists shall be timely filed with the Clerk of the Court.

(b)    All exhibits to be offered in evidence at trial shall be made available to opposing counsel for examination and initialing.

(c)    All plaintiff medical evaluations and other examinations pursuant to Rule 1.360 F.R. Civ.P. shall have been completed.

4.    The following shall be done at least **fifteen (15) days** prior to the Monday of the trial period set forth above:

(a)    All pre-trial motions, depositions noticed for use at trial and/or discovery matters or proceedings related thereto shall have been completed. **Counsel are admonished to undertake, initiate and/or complete all discovery in such a manner as to comply with the time limitations set forth herein. No further discovery procedures or depositions for preservation of testimony shall be allowed without specific leave of Court or Court-approved written agreement of counsel.**

(b)  Counsel shall meet with a view toward exhausting all efforts to reach a settlement.

5.    Counsel shall immediately notify this Court in the event of settlement and submit a Stipulation for and Order of Dismissal. Counsel shall also notify the Court of any pending hearings that will be canceled as a result of the settlement.

6.    In the event the Trial of this matter is continued, then each time limitation and provision contained above shall apply as to the new trial date.

**DONE AND ORDERED** in Chambers, at Miami, Dade County, Florida, on this 22nd day of February, 2007.

_____
MARY BARZEE FLORES
CIRCUIT COURT JUDGE

**IT IS HEREBY CERTIFIED** that a true copy of this Order was mailed to each attorney of record and/or party appearing without counsel on the above date, as follows:

Original to Court File
Copies furnished to:
    Gary M. Carman, Esq.  1111 Brickell Ave., Suite 2050  Miami, FL 33131
    Jennifer A. Schwartz, Esq.  2 So. Biscayne Blvd., Biscayne Tower, Suite 3500  Miami, FL 33131
    Christine L. Wilson, Esq.  2 So. Biscayne Blvd., 1 Biscayne Tower, Suite 3500  Miami, FL 33131

"If you are a person with a disability who needs any accommodation to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the Dade County Court's ADA Coordinator at 73 West Flagler, Room 1600, Miami, FL  33130, telephone numbers (305) 375-2006 for voice or (305) 375-2007 for TDD and 350-6205 for fax, within 2 working days of your receipt of this document. TDD users may also call 1-800-955-8771, for the Florida Relay Service."

ORDER SETTING JURY TRIAL, PRE-TRIAL CONFERENCE AND PRE-TRIAL INSTRUCTIONS - Case No.: 06-25162-CA-01
Docname: gj_jury_trial

Page 2 of 2

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN
AND FOR DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION
Judicial Section: 21
Case No. 06-25162-CA-01

LEONARD CHERNYS,

    Plaintiff(s),

v.

                                            **ORDER OF REFERRAL TO MEDIATION**

STANDARD PACIFIC OF SOUTH FLORIDA,
G.P., INC., et al.,

    Defendant(s).

_____/

    Pursuant to Chapter 44 of the Florida Statutes, Rules 1.700-1.760 F.R.Civ.P., and Administrative Order No. 92-39 (entered in Case No. 92-1), the above styled cause is hereby referred to mediation:

    (1)    Within fifteen days (ten days plus an additional five days for mailing) of this Order of Referral, the parties may mutually agree upon the designation of any certified mediator of their choice. If able to agree, the plaintiff or petitioner shall, within the time period set forth above, file with the Clerk of the Court, and serve upon the parties, the agreed upon mediator, the Mediation/Arbitration Division of the 11th Judicial Circuit (address: 73 West Flagler Street, Room 1700, Miami, Florida 33130; telephone: (305) 375-5225), and the trial Judge's Judicial Assistant, a "Notice of Stipulation of Mediator" which shall identify the name, address, and telephone number of the mediator agreed upon. Upon filing the "Notice of Stipulation of Mediator", said Mediator shall be deemed designated to mediate without further Order of Court.

    (2)    In the event the parties are unable to agree upon the selection of a mediator within the specified period, the plaintiff or petitioner shall make a "Request for Appointment of Mediator" from the Mediation Division within five (5) days thereafter, certifying that notwithstanding a good faith effort to agree, the parties were unsuccessful in so doing and requesting said Division to select the next available mediator from the rotating list of Certified Mediators. Said "Request for Appointment of Mediator" shall be filed with the Clerk of the Court and copies shall be served upon the Mediation Division, all parties, and the trial Judge's Judicial Assistant. The Division shall make said selection and file with the Clerk of the Court a "Notice of Designation of Mediator". The "Request for Appointment" shall be accompanied by a sufficient number of stamped addressed envelopes in order for the Division to serve the "Notice of Designation of Mediator" upon the parties, the selected mediator and the trial Judge's Judicial Assistant. Upon filing of the "Notice of Designation of Mediator", the Mediator selected by the Division shall be deemed designated to mediate without further order of court.

    (3)    In the event any of the parties are indigent pursuant to Chapter 57, Fla. Statutes, or represented by Legal Aid, Legal Services of Greater Miami, or similar pro bono organizations; or determined to qualify as indigent by the trial judge after the entry of an Order in full compliance with the requirements of existing Administrative Order, or in cases where Metropolitan Dade County is a

party, the plaintiff or petitioner shall prominently note same on the "Request for Appointment of Mediator", and the Mediation Division is directed to designate as mediator the Courts' own in-house mediation unit, free of charge, as to said party or parties.

(4)    The appearance of counsel, and each party or representative of each party with authority to enter into a full and complete compromise and settlement, without further consultation, is mandatory. If insurance is involved, an adjuster with authority up to the policy limits or the most recent demand, whichever is lower, shall attend.

(5)    The Mediator shall be compensated at the rate of $125.00 per hour (unless otherwise agreed by the Mediator and parties), with a two (2) hour minimum, to be divided equally between all of the parties. This minimum two (2) hour fee shall be paid at least seven (7) days prior to the scheduled mediation, and the balance of the fee, if any, shall be paid at the conclusion of the conference. Counsel for the respective parties are responsible for financial arrangements with their clients and timely payment of mediation fees. The mediation conference shall not exceed three (3) hours, unless the parties otherwise agree and participate longer.

(6)    Written notice to the Mediator of any change or cancellation of the scheduled mediation conference must be given at least 72 hours prior to said conference. Failure to do so shall result in the imposition of the two (2) hour minimum fee paid by the canceling party to the Mediator, unless the Court orders otherwise for exceptional circumstances beyond the parties' control or the Mediator agrees to waive same.

(7)    The parties and designated Mediator are ordered and directed to proceed with mediation in accordance with the Rules of Civil Procedure. If any of the parties fails to comply with the obligations set forth herein to ensure that mediation is accomplished expeditiously, the court may, on its own Motion or on Motion of any party, dismiss the case, strike pleadings, enter default, remove the case from the trial calendar, or impose any other sanctions that it may deem appropriate under the circumstances.

**DONE AND ORDERED** in Chambers, at Miami, Dade County, Florida, on this 22nd day of February, 2007.

MARY BARZEE FLORES
CIRCUIT COURT JUDGE

Original to Court File

Copies furnished to:
    Mediation Division
    Gary M. Carman, Esq.  1111 Brickell Ave., Suite 2050  Miami, FL 33131
    Jennifer A. Schwartz, Esq.  2 So. Biscayne Blvd., Biscayne Tower, Suite 3500  Miami, FL 33131
    Christine L. Wilson, Esq.  2 So. Biscayne Blvd., 1 Biscayne Tower, Suite 3500  Miami, FL 33131

"If you are a person with a disability who needs any accommodation to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the Dade County Court's ADA Coordinator at 73 West Flagler, Room 1600, Miami, FL 33130, telephone numbers (305) 375-2006 for voice or (305) 375-2007 for TDD and 350-6205 for fax, within 2 working days of your receipt of this document. TDD users may also call 1-800-955-8771, for the Florida Relay Service.

ORDER OF REFERRAL TO MEDIATION - Case No.: 06-25162-CA-01
Docname: gj_ref_med

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.: **06-25162 CA 21**

LEONARD CHERNYS,

       Plaintiff(s),

v.

STANDARD PACIFIC OF SOUTH FLORIDA, et al.,

       Defendant(s),

_____/

ORDER GRANTING/DENYING MOTION TO TRANSFER

THIS CAUSE came on to be heard upon the **Defendant's** Motion to Transfer, and the Court being fully advised in the premises, it is hereby

_____ GRANTED.  It is further ORDERED AND ADJUDGED that this cause is hereby transferred to Section No. CA 40.

_____ DENIED.

DONE AND ORDERED in Chambers at Miami-Dade County, Florida, this 27TH of February, 2007.

# STUART M. SIMONS

STUART M. SIMONS
Administrative Judge

Copies furnished to:
    Counsel of record

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 06-25162-CA-21

LEONARD CHERNYS                          )
                                         )
                Plaintiff,               )
                                         )
vs.                                      )
                                         )
STANDARD PACIFIC OF SOUTH                )
FLORIDA, G.P. INC., and STANDARD         )
PACIFIC CORP.                            )
                                         )
                Defendants.              )
                                         )

---

## DEFENDANTS' MOTION TO COMPEL DISCOVERY FROM PLAINTIFF

Defendants, STANDARD PACIFIC OF SOUTH FLORIDA, G.P., INC. and STANDARD PACIFIC CORP. (hereafter "Defendants" or collectively referred to as "Standard Pacific"), by and through their undersigned counsel, and pursuant to Rule 1.380 of the Florida Rules of Civil Procedure, hereby move for the entry of an order compelling Plaintiff LEONARD CHERNYS ("Plaintiff") to respond to Defendants' First Set of Interrogatories and First Request for Production, and as grounds state as follows:

### I.    Preliminary Statement

Plaintiff was employed at-will by Standard Pacific in its South Florida division for approximately five years.[1] On October 12, 2006, Plaintiff's position was eliminated as part of the Company's reduction in force in South Florida.   On or about November 22, 2006, Plaintiff filed a four-count Complaint alleging: Declaratory Relief (Count I), Fraudulent Misrepresentation (Count II), Breach of Contract (oral) (Count III), and Wrongful Termination

---

[1] Plaintiff was employed by the Company's predecessor for approximately 20 years prior to his employment with Standard Pacific.

Case No. 06-25162-CA-21

(Count IV). Specifically, Plaintiff claims Standard Pacific breached an oral agreement by terminating his employment and by not paying him a profit sharing bonus for the year 2006.

## II.    Factual Background

1.    On February 13, 2007, Defendants served their First Request for Production and First Set of Interrogatories (hereafter collectively referred to as "Discovery Requests") upon the Plaintiff. See composite Exhibit "A" hereto.

2.    Pursuant to Fla. R. Civ. P. 1.340 and 1.350, Plaintiff's responses to the Discovery Requests were due on or before March 20, 2007.

3.    On March 19, 2007, Plaintiff served by facsimile his Responses to Defendants' First Request for Production. See Exhibit "B" hereto. Plaintiff did not produce any responses to Defendants' First Set of Interrogatories or any documents responsive to the Request for Production. Moreover, many of Plaintiff's responses and objections to the Request for Production are insufficient.

4.    In a good faith effort to resolve the issues raised by Plaintiff's insufficient discovery responses, counsel for Defendants sent a letter to Plaintiff's counsel on March 20, 2007. See Exhibit "C" hereto. Specifically, Defendants requested Plaintiff to: (1) produce the documents that Plaintiff indicates he currently has in his possession; (2) produce a Privilege Log of the documents withheld from production on the basis of privilege; and (3) withdraw the objections asserted in response to certain requests explaining why they have no merit. Id. Defendants requested Plaintiff to produce the supplemental responses, documents, and Privilege Log by March 23, 2007. Id. Plaintiff ignored Defendants' letter.

5.    On March 22, 2007, counsel for Defendants sent a second letter to Plaintiff's counsel informing him that Plaintiff's responses to Defendants' First Set of Interrogatories were past due. See Exhibit "D" hereto. The letter asks Plaintiff's counsel to

advise when Defendants can expect to receive Plaintiff's responses.  Plaintiff did not respond to Defendants' letter, but on March 23, 2007, Plaintiff served by facsimile his responses and objections to Plaintiff's First Set of Interrogatories.  See Exhibit "E" attached hereto.  Many of the objections and responses are insufficient.

6.    In a third good faith effort to resolve the issues raised by Plaintiff's insufficient discovery responses, without having to bring them to the Court's attention, counsel for Defendants sent Plaintiff's counsel a letter on March 27, 2007 outlining the deficiencies in Plaintiff's discovery responses.  See Exhibit "F" hereto.  Defendants requested Plaintiff produce complete responses to the Discovery Requests and the documents responsive to Defendants' First Request for Production by the end of the business day on March 29, 2007.  Id.  Plaintiff finally served documents on March 30, 2007.

7.    To date, Plaintiff has failed to: (1) respond to any of the above letters wherein Defendants try to resolve the issues raised in this Motion; (2) produce a Privilege Log of the documents withheld from production on the basis of privilege; or (3) serve responsive verified answers to Defendants' First Set of Interrogatories.

**III.    Plaintiff Has Failed to Sufficiently Respond to Defendants' Interrogatories Nos. 2, 5, 6, 7, 8, 11, 12 and 13**

**Interrogatory No. 2** asks Plaintiff to "[p]lease identify each employer for whom you have worked since the cessation of your employment with Standard Pacific by completing the below chart:"

| Name/Address of Employer | Dates of Employment | Job Titles(s) | Rate(s) of Pay | Name of Immed. Superv. | Reason for leaving |
|---|---|---|---|---|---|
| | | | | | |

**Plaintiff's Answer to Interrogatory No. 2:**  "HAA Preferred Partners Supervised and expedited build out space.  Fee received: $5,000.00.  Oct.-Feb. 2006-2007.  N/A. 0. N/A. Job finished."

**Plaintiff's Response to Interrogatory No. 2 is insufficient** because Plaintiff failed to provide the address or any other information for this employer, as specified in the

Case No. 06-25162-CA-21

definitions section in the First Set of Interrogatories. The definitions section specifically states when the term "identify" "is used in reference to an individual, the term shall mean to state his or her full and present or last known address (including zip code), phone number and present or last known position or business affiliation (designating which), and the job description. . . . when used in reference to a firm, partnership, corporation, proprietorship, or association, shall mean to state its full name and present or last known address (designating which) and to state the name and address of each person within the entity likely to have knowledge of the relationship between the entity and Plaintiff."

Plaintiff has failed to provide an address, telephone number, and the name and address of each person within the company likely to have knowledge of the relationship between HAA Preferred Partners and Plaintiff. This information is relevant to Plaintiff's mitigation of damages since he asserts a claim for lost wages in the Complaint. Plaintiff has ignored Defendants' requests to supplement his answer.

*       *       *

**Interrogatory No. 5** asks Plaintiff "[w]ith regard to your claim in Paragraph 33 of the Complaint that 'in 2006 the Plaintiff and Defendants had certain contractual decisions in which it was agreed that the Plaintiff would waive his right to the profit sharing plan for continued long term employment with the company,' please identify all facts supporting this contention including, but not limited to, (a) the person or persons who made the 'contractual decisions' on behalf of each Defendant; (b) the exact terms of all offers made by each Defendant and whether you accepted such offers; and (c) any witnesses to such "contractual decisions,' conversations or negotiations.

**Plaintiff's Answer to Interrogatory No. 5**: "(a) Discussions took place between the Plaintiff and Diana Ibarria about his willingness to continue to work for the company for the next four or five years in lieu of receiving the agreed 'soft landing' arrangement that he had with the company. (b) However, no waiver of the monies due Plaintiff under the soft landing was abandoned or waived, only the time period in which and how they would be paid. (c) Witnesses to these conversations are unknown at this time."

-4-

**Plaintiff's Answer to Interrogatory No. 5 is non-responsive**.  Section (a) asks Plaintiff to specifically identify the person or persons who made the contractual decisions on behalf of each Defendant.  Plaintiff did not provide this information in his answer.  Section (b) asks Plaintiff to specifically state the exact terms of all offers made by each Defendant and whether he accepted such offers.  Plaintiff did not identify any offers made to him by either Defendant, nor did he state the exact terms of any such offers or whether he accepted them.  Finally, Plaintiff failed to specify what he means by the term "soft landing."  Plaintiff has ignored Defendants' requests to supplement his answer.

*      *      *

Interrogatory No. 6 asks Plaintiff to "[p]lease state each item of damage that you claim.  Include in your answer:  (1) the count to which the item of damages relates; (2) the category into which each item of damages falls (i.e., actual damages, compensatory damages, punitive damages) and any other relevant categories; (3) the factual basis for each item of damages; (4) an explanation of how you computed each item of damages, including any mathematical formula used; and (5) identify any documents in support of your damage claims."

Plaintiff's Answer to Interrogatory No. 6: "1. We are at this time unable to calculate our damages, as the Defendant has failed to produce the 2006 Bonus Calculation based on Schedule 1, Income Statements. The Plaintiff is entitled to 2 1/2 percent of these figures of the pre-tax net profits plus the balance of his remaining salary. Plaintiff may, pending further investigation and discovery, seek to amend the Complaint for punitive damages. 2. The damages fall under actual and compensatory damages. 3. See Complaint and Discovery for the factual basis for each item of damages. 4. Based on the information furnished by the Defendant, this information was calculated. 5. These documents are being gathered and are currently in possession of the Defendant."

**Plaintiff's Answer to Interrogatory No. 6 is non-responsive**.  As to (1) and (2) of the interrogatory, Plaintiff failed to specify the count to which each item of damages relates.  Plaintiff has filed a four-count Complaint.  Plaintiff should have some idea of what damages he is seeking in each count.  As to (3) of the interrogatory, Plaintiff failed to provide any factual basis for each item of damages.  Referring Defendants to the Complaint is insufficient, as those

allegations were not made under oath. Moreover, such a response requires Defendants to guess which allegations Plaintiff relies upon for his damages. Additionally, referring Defendants to "discovery" is unduly vague and ambiguous. Plaintiff is required to state the factual bases for his damages claims in response to Interrogatory No. 6. As to (4) of the interrogatory, Plaintiff states that the information was calculated, but fails to provide an explanation of how he computed each item of damages, including any mathematical formula used. Plaintiff is required to provide this information for both his actual and compensatory damages claims. Finally, as to (5) Plaintiff must identify any documents that he believes exists to support his damages claims, regardless of whether he is in possession of such documents. Plaintiff has ignored Defendants' requests to supplement his answer.

*     *     *

**Interrogatory No. 7** asks Plaintiff to "[s]tate whether you or any attorney or representative on your behalf has obtained any <u>oral or written</u> statements, reports, memoranda or records from any person which in any way concern the facts of this case or the matters alleged in your pleadings. If your answer is in the affirmative, separately identify:

(a)     the author of each such statement, report, memorandum or recording;

(b)     the person or persons to whom the statement, report, memorandum or recording was issued, distributed, or otherwise provided;

(c)     the present location and custodian of each such statement, report, memorandum or recording; and

(d)     state the date each such statement, report, memorandum or recording was prepared."

**Plaintiff's Answer to Interrogatory No. 7:** "Objection, work-product, attorney-client privilege."

**Plaintiff's Objections to Interrogatory No. 7** are insufficient and without legal merit. First, Defendant submits Plaintiff waived his objections by failing to timely respond to

the interrogatories. Second, the <u>identity</u> of persons is not privileged. There is an issue whether Plaintiff has knowledge of this "privileged" information or his attorney. If Plaintiff has knowledge of this information, then it is not privileged. If it is his attorney who has knowledge, at a minimum, the persons must be identified so that Defendants can depose them. Finally, the objections fail to include any factual basis to support the objections. The instructions section of Defendants' First Set of Interrogatories require that the following information be provided if Plaintiff refuses to answer an interrogatory on the basis of privilege: (1) the nature of the privilege claimed (including work product); (2)    if the privilege is being asserted in connection with a claim or defense governed by state law, the state privilege rule being invoked; (3) the date of the document or oral communication; (4) if a document: its type (correspondence, memorandum, facsimile, etc.), custodian, location, and such other information sufficient to identify the document for a subpoena duces tecum or a document request, including where appropriate the author, the addressee; and if not apparent, the relationship between the author and addressee; (5) if an oral communication: the place where it was made, the names of the persons present while it was made, and, if not apparent, the relationship of the persons present to the declarant; and (6) the general subject matter of the document or oral communication. The blanket objections asserted in response to Interrogatory No. 7 provide Defendants with no information to assist them in ascertaining whether the responsive information is, in fact, privileged and no Privilege Log has been produced. Plaintiff has ignored Defendants' requests to supplement his answer.

*     *     *

**Interrogatory No. 8** asks Plaintiff "[have you heard or do you know about any statement or remark made by or on behalf of any party to this lawsuit, other than yourself, concerning any issue in this lawsuit? If so, state the name and address of each person who made the statement or statements, the name and address of

-7-

each person who heard it, and the date, time, place, and substance of each statement."

**Plaintiff's Answer to Interrogatory No. 8**: "Yes, attorney-client privilege, work-product, information obtained by counsel."

**Plaintiff's Objections to Interrogatory No. 8** are insufficient and without legal merit. First, Defendant submits Plaintiff waived his objections by failing to timely respond to the interrogatories. Second, the <u>identity</u> of persons is not privileged. There is an issue whether Plaintiff has knowledge of this "privileged" information or his attorney. If Plaintiff has knowledge of this information, then it is not privileged. If it is his attorney who has knowledge, at a minimum, the persons must be identified so that Defendants can depose them. Finally, the objections fail to include any factual basis to support the objections. As stated above, if Plaintiff is refusing to answer an interrogatory based on privilege or work-product, he must state: (1) the nature of the privilege claimed (including work product); (2) if the privilege is being asserted in connection with a claim or defense governed by state law, the state privilege rule being invoked; (3) the date of the document or oral communication; (4) if a document: its type (correspondence, memorandum, facsimile, etc.), custodian, location, and such other information sufficient to identify the document for a subpoena duces tecum or a document request, including where appropriate the author, the addressee; and if not apparent, the relationship between the author and addressee; (5) if an oral communication: the place where it was made, the names of the persons present while it was made, and, if not apparent, the relationship of the persons present to the declarant; and (6) the general subject matter of the document or oral communication. The blanket objections asserted in response to Interrogatory No. 8 provide Defendants with no information to assist them in ascertaining whether the responsive information is, in fact, privileged and no Privilege Log has been produced. Plaintiff has ignored Defendants' requests to supplement his answer.

\*        \*        \*

**Interrogatory No. 11** asks Plaintiff to "[i]dentify each third person who has contacted you, or any attorney or representative of yours, concerning this action or its subject matter, or who has been contacted by you, or any attorney or representative of yours, concerning this action or its subject matter."

**Plaintiff's Answer to Interrogatory No. 11**: "Objection, work-product, privilege."

**Plaintiff's Objections to Interrogatory No. 11** are insufficient and without legal merit. First, Defendant submits Plaintiff waived his objections by failing to timely respond to the interrogatories. Second, the <u>identity</u> of persons is not privileged. There is an issue whether Plaintiff has knowledge of this "privileged" information or his attorney. If Plaintiff has knowledge of this information, then it is not privileged. If it is his attorney who has knowledge, at a minimum, the persons must be identified so that Defendants can depose them. Finally, the objections fail to include any factual basis to support the objections. As stated above, if Plaintiff is refusing to answer an interrogatory based on privilege or work-product, he must state: (1) the nature of the privilege claimed (including work product); (2) if the privilege is being asserted in connection with a claim or defense governed by state law, the state privilege rule being invoked; (3) the date of the document or oral communication; (4) if a document: its type (correspondence, memorandum, facsimile, etc.), custodian, location, and such other information sufficient to identify the document for a subpoena duces tecum or a document request, including where appropriate the author, the addressee; and if not apparent, the relationship between the author and addressee; (5) if an oral communication: the place where it was made, the names of the persons present while it was made, and, if not apparent, the relationship of the persons present to the declarant; and (6) the general subject matter of the document or oral communication. The blanket objections asserted in response to Interrogatory No. 11 provide Defendants with no

information to assist them in ascertaining whether the responsive information is, in fact, privileged. Plaintiff has ignored Defendants' requests to supplement his answer.

*    *    *

**Interrogatory No. 12** asks Plaintiff to "(a) State with specificity and particularity each and every fact in support of your contention that 'Chernys' termination of employment was without cause and in violation of the Agreement he reached with the Defendants,' as alleged in paragraph 56 of the Complaint and, for each such fact, list the name, address, telephone number and job position of each person who you believe has knowledge of these facts and the basis for each person's knowledge; and (b) explain why Plaintiff believes Defendants needed cause to terminate his employment."

**Plaintiff's Answer to Interrogatory No. 12**: (a) See Complaint, Plaintiff is currently compiling the names and addresses of witnesses and will supply them at a later date. (b) Plaintiff believes that he was improperly terminated and that there was no cause to terminate him. He is entitled to his bonus for 2006."

**Plaintiff's Answer to Interrogatory No. 12 is non-responsive.** Again, Plaintiff's referral to the Complaint is insufficient, as those allegations were not made under oath. Moreover, if Plaintiff currently is aware of any names and addresses of any witnesses he believes can support paragraph 56 of the Complaint, he should produce this information now and not "at a later date." Plaintiff has had more than 40 days to compile and produce this information. Finally, Plaintiff's statements that he simply believes "there was no cause to terminate him" and that "he is entitled to his bonus for 2006" are non-responsive. The interrogatory asks Plaintiff to **explain why Plaintiff believes Defendants needed cause** to terminate his employment. Plaintiff does not answer this question in his response to Interrogatory No. 12. Plaintiff has ignored Defendants' requests to supplement his answer.

*    *    *

**Interrogatory No. 13** asks Plaintiff to "[s]tate the terms of the oral contract you contend you had with Defendants to participate in the profit sharing program for 2004, 2005 and 2006, as alleged in Paragraph 32 of the Complaint. With regard

to such oral contract, identify: (a) the person or persons with whom you had such a conversation; (b) the exact terms of the offer made by each Defendant; (c) when the oral contract was entered into; and (d) any witnesses to the statement(s)."

**Plaintiff's Answer to Interrogatory No. 13**: "(a) In 2004, the Plaintiff has [sic] a conversation with James Carr and was advised that he had reached an agreement with Michael Courtney [sic] on behalf of the Defendants.  (b,c) He was to receive a 'soft landing' which would incur [sic] that he would continue employment through 12/31/06 and would share in the profit sharing program for 2004, 2005 and 2006.  In fact, as agreed to, Plaintiff did receive his 'soft landing' funds for 2004 and 2005 and is seeking the arbitrary referral of the Defendant for 2006 payment.  (d) The people that were witnesses to the above are James Carr, Hal Eisenacher, and Mike Courtney [sic]."

**Plaintiff's Answer to Interrogatory No. 13 is non-responsive**. Plaintiff is asked to state the terms of the alleged oral contract referenced in Paragraph 32 of the Complaint. Plaintiff's answer to Interrogatory No. 13 fails to state the terms to this alleged contract. Further, Plaintiff's answer to part (b) of the interrogatory fails to state the terms of the alleged offer and further fails to specify what is meant by the term "soft landing."  Plaintiff has ignored Defendants' requests to supplement his answer.

*      *      *

IV.    **Plaintiff Has Failed to Sufficiently Respond to Defendants' Request for Production Nos. 7 and  18**

**Request No. 7** asks Plaintiff to produce "[a]ll documents that demonstrate, relate or refer to any income you have received from January 1, 2002 through the present including, but not limited to, income tax returns, W-2 forms and/or 1099 forms."

**Plaintiff's Response to Request No. 7**: "Objection, relevancy materiality and Plaintiff files Joint Returns and the Returns are privileged and confidential. Defendant for the 2002 through 2006 years is the only source of Plaintiff's income other than interest and sale of property and they are in possession of all W-2 forms."

**Plaintiff's Objections to Request No. 7 are insufficient and without legal merit**.  First, Plaintiff failed to state any factual basis for his objections, and the blanket objections asserted give Defendants no information to enable them to respond to the objections.

Case No. 06-25162-CA-21

Clearly, documents regarding Plaintiff's mitigation of damages are directly relevant and material to the case, as the Complaint states that Plaintiff is seeking lost wages in this case. <u>See</u> Complaint, subsection (D) of Wherefore Clause following ¶ 39. Second, Plaintiff admits in his response that he received income from the interest and sale of property, but failed to produce any documents reflecting the amount of money he received. Third, Plaintiff claims that his joint tax returns are privileged and confidential. Defendants disagree. Plaintiff failed to cite to any legal authority to support this position, and he failed to produce any other documents which reflect the income he received during this time period. To date, Plaintiff has ignored Defendants requests to produce the documents and case authority supporting his position that the joint tax returns are privileged and confidential.2

\*       \*       \*

**Request No. 18** asks Plaintiff to produce "[a]ny documents that you identified, reviewed or relied upon in responding to or formulating your responses to Defendants' First Set of Interrogatories."

**Plaintiff's Response to Request No. 18**: "Documents not privileged nor attorney-client will be produced."

**Plaintiff's Response to Request No. 18 is insufficient**, as Plaintiff was required to produce a privilege log identifying the documents withheld from disclosure on the basis of privilege on or before March 20, 2007. <u>See</u> Fla. R. Civ. P. 1.280. Defendants submit that Plaintiff waived these objections by failing to timely produce a privilege log. Moreover, Plaintiff was required to produce all non-privileged responsive documents or make them available for inspection and copying on or before March 20, 2007. <u>See</u> Fla. R. Civ. P. 1.350. Plaintiff has ignored Defendants requests to produce a privilege log and the documents responsive to this request.

---

2 Defendants agree to sign a confidentiality agreement with respect to Plaintiff's tax returns.

*     *     *

## V.    The Manner in Which Plaintiff Produced Documents Imposes an Unnecessary Burden and Expense on Defendants

On or about March 30, 2007, nearly two weeks after Plaintiff's responses to Defendants' Discovery Requests were due, Plaintiff finally produced the documents he claims are responsive to Defendants' First Request for Production. However, the manner in which the documents were produced fails to comply with Rule 1.350. Specifically, Plaintiff produced a five to six-inch stack of unorganized and unidentified documents. Thus, Defendants are required to search through these voluminous documents to (1) determine whether any documents are responsive to the requests; and (2) guess which documents Plaintiff considers to be responsive to each request. Further, Plaintiff cannot claim that this is the manner in which he has maintained all of the requested documents based on the diversity of the documents requested and produced. Thus, Plaintiff should be required to organize and label the documents pursuant to each individual request, in accordance with the requirements of Fla. R. Civ. P. 1.350 ("When producing documents, the producing party shall either produce them as they are kept in the ordinary course of business or shall identify them to correspond with the categories in the request").

*     *     *

## VI.    Conclusion

As noted above, Plaintiff's documents and responses to the Discovery Requests were due on or before March 20, 2007. Plaintiff's failure to timely produce the discovery prejudiced Defendants' ability to fully prepare for depositions of key witnesses which took place on March 22 and 27, 2007. Additional depositions are in the process of being scheduled.

Case No. 06-25162-CA-21

**WHEREFORE**, Defendants STANDARD PACIFIC OF SOUTH FLORIDA, G.P., INC. and STANDARD PACIFIC CORP. respectfully request that this Honorable Court enter an Order compelling Plaintiff LEONARD CHERNYS to:  (1) produce a Privilege Log of the documents withheld from production on the basis of privilege; (2) produce complete, _verified_ answers to Defendants' First Set of Interrogatories Nos. 2, 5, 6, 7, 8, 11, 12 and 13; (3) pay Defendants' reasonable attorney's fees and costs incurred in connection with the preparation of this Motion, in addition to such other and further relief as this Court deems just and proper.

Dated this 3 day of April 2007.

Respectfully submitted,
JACKSON LEWIS LLP
One Biscayne Tower, Suite 3500
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone:  (305) 577-7600
Facsimile:   (305) 373-4466

By:_____
Christine L. Wilson, Esq.
Florida Bar No. 143588
E-mail: _wilsonc@jacksonlewis.com_
Jennifer A. Schwartz, Esq.
E-mail: _schwartj@jacksonlewis.com_
Florida Bar No. 502431
ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing was provided via U.S. Mail to **Gary M. Carman, Esq.,** 1111 Brickell Avenue, Suite 2050, Miami, Florida 33131 this 3 day of April 2007.

_____
Jennifer A. Schwartz, Esq.

# EXHIBIT A

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

CIVIL DIVISION

CASE NO.: 06-25162-CA-21

LEONARD CHERNYS                          )
                                         )
          Plaintiff,                     )
                                         )
v.                                       )
                                         )
STANDARD PACIFIC OF SOUTH                )
FLORIDA, G.P. INC., and STANDARD         )
PACIFIC CORP.                            )
                                         )
          Defendants.                    )

---

## DEFENDANTS' FIRST SET OF INTERROGATORIES TO PLAINTIFF LEONARD CHERNYS

Defendants, STANDARD PACIFIC OF SOUTH FLORIDA, G.P., INC. and STANDARD PACIFIC CORP. (hereafter collectively referred to as "Defendants" or "Standard Pacific"),[1] by and through its undersigned counsel, propounds the following First Set of Interrogatories upon Plaintiff, LEONARD CHERNYS, and requests that they be answered separately, fully and under oath, within thirty (30) days of service, pursuant to Florida Rule of Civil Procedure 1.340.

### DEFINITIONS

a.      The words "you," "yours," and/or "yourselves" mean Plaintiff, LEONARD CHERNYS, or other persons acting or purporting to act, on the behalf of Plaintiff, LEONARD CHERNYS.

---

[1] Reference to Defendants collectively includes each Defendant on an individual basis.

b.    The singular shall include the plural and vice versa; the terms "and" and "or" shall be both conjunctive and disjunctive; and the term "including" means "including without limitation."

c.    "Date" shall mean the exact date, month and year, if ascertainable or, if not, the best approximation of the date (based upon relationship with other events).

d.    The word "document" shall mean any writing, recording or photograph in your actual or constructive possession, custody, care or control, which pertains directly or indirectly, in whole or in part, either to any of the subjects listed below or to any other matter relevant to the issues in this action, or which are themselves listed below as specific documents, including, but not limited to:  correspondence, memoranda, notes, messages, diaries, minutes, books, reports charts, ledgers, invoices, computer printouts, microfilms, video tapes or tape recordings.

e.    "Agent" shall mean: any agent, employee, officer, director, attorney, independent contractor or any other person acting at the direction of or on the behalf of another.

f.    "Person" shall mean any individual, corporation, proprietorship, partnership, trust, association or any other entity.

g.    The words "pertain to" or "pertaining to" mean: related to, refers to, contains, concerns, describes, embodies, mentions, constitutes, constituting, supports, corroborates, demonstrates, proves, evidences, shows, refutes, disputes, rebuts, controverts or contradicts.

h.    The words "relate or refer to" shall mean directly or indirectly mentioning or describing, pertaining to, being connected with, or reflecting upon a stated subject matter.

i.    The terms "third party" or "third parties" refers to individuals or entities that are not a party to this action.

j.      The term "action" shall mean the case entitled <u>Leonard Chernys v. Standard Pacific of South Florida, G.P., Inc. and Standard Pacific Corp.</u>, Case No. 06-25162-CA-21, pending in the 11th Judicial Circuit Court in and for Miami-Dade County, Florida.

l.      "Identify," when used in reference to a document, means and includes the name and address of the custodian of the document, the location of the document, and a general description of the document, including (1) the type of document (i.e., correspondence, memorandum, facsimile, etc.); (2) the general subject matter of the document; (3) the date of the document; (4) the author of the document; (5) the addressee of the document; and (6) the relationship of the author and addressee to each other.

m.      "Identify," when used in reference to an individual, shall mean to state his or her full and present or last known address (including zip code), phone number and present or last known position or business affiliation (designating which), and the job description;

n.      "Identify," when used in reference to a firm, partnership, corporation, proprietorship, or association, shall mean to state its full name and present or last known address (designating which) and to state the name and address of each person within the entity likely to have knowledge of the relationship between the entity and Plaintiff.

Ca.~o. 06-25162-CA-21

## INSTRUCTIONS

If you object to fully identifying a document or oral communication because of a privilege, you must nevertheless provide the following information, unless divulging the information would disclose the privileged information:

(1)     the nature of the privilege claimed (including work product);

(2)     if the privilege is being asserted in connection with a claim or defense governed by state law, the state privilege rule being invoked;

(3)     the date of the document or oral communication;

(4)     if a document: its type (correspondence, memorandum, facsimile, etc.), custodian, location, and such other information sufficient to identify the document for a subpoena duces tecum or a document request, including where appropriate the author, the addressee; and if not apparent, the relationship between the author and addressee;

(5)     if an oral communication: the place where it was made, the names of the persons present while it was made, and, if not apparent, the relationship of the persons present to the declarant; and

(6)     the general subject matter of the document or oral communication.

## INTERROGATORY NO. 1

Identify and provide the name, address, telephone number, place of employment and job title of any person who has, claims to have, or whom you believe may have knowledge or information pertaining to any fact alleged in the pleadings filed in this action, or any fact underlying the subject matter of this action, and state the specific nature and substance of the knowledge that you believe each person may have.

## ANSWER

Ca    o. 06-25162-CA-21

## INTERROGATORY NO. 2

Please identify each employer for whom you have worked since the cessation of

your employment with Standard Pacific by completing the below chart.

### ANSWER

| Name/Address of Employer | Dates of Employment | Job Titles(s) | Rate(s) of Pay | Name of Immed. Superv. | Reason for leaving |
|---|---|---|---|---|---|
| | | | | | |

Case No. 06-25162-CA-21

## INTERROGATORY NO. 3

Please identify each employer or potential employer that you have contacted or have been contacted by with respect to possible employment since the cessation of your employment with Standard Pacific by completing the below chart:

## ANSWER

| Name/Address of Employer | Method and Date of Contact | Position Sought | Employer Response | How You Learned of the Position |
|---|---|---|---|---|
| | | | | |

Case No. 06-25162-CA-21

## INTERROGATORY NO. 4

Have you ever been convicted of a crime, other than any juvenile adjudication, which under the law under which you were convicted was punishable by death or imprisonment in excess of 1 year, or that involved dishonesty or a false statement regardless of the punishment? If so, state as to each conviction the specific crime and the date and place of conviction.

## ANSWER

Case No. 06-25162-CA-21

## INTERROGATORY NO. 5

With regard to your claim in Paragraph 33 of the Complaint that "in 2006 the Plaintiff and Defendants had certain contractual decisions in which it was agreed that the Plaintiff would waive his right to the profit sharing plan for continued long term employment with the company," please identify all facts supporting this contention including, but not limited to, (a) the person or persons who made the "contractual decisions" on behalf of each Defendant; (b) the exact terms of all offers made by each Defendant and whether you accepted such offers; and (c) any witnesses to such "contractual decisions," conversations or negotiations.

## ANSWER

## INTERROGATORY NO. 6

Please state each item of damage that you claim. Include in your answer: (1) the count to which the item of damages relates; (2) the category into which each item of damages falls (i.e., actual damages, compensatory damages, punitive damages) and any other relevant categories; (3) the factual basis for each item of damages; (4) an explanation of how you computed each item of damages, including any mathematical formula used; and (5) identify any documents in support of your damage claims.

## ANSWER

Case No. 06-25162-CA-21

## INTERROGATORY NO. 7

State whether you or any attorney or representative on your behalf has obtained any oral or written statements, reports, memoranda or records from any person which in any way concern the facts of this case or the matters alleged in your pleadings. If your answer is in the affirmative, separately identify:

(a) the author of each such statement, report, memorandum or recording;

(b) the person or persons to whom the statement, report, memorandum or recording was issued, distributed, or otherwise provided;

(c) the present location and custodian of each such statement, report, memorandum or recording; and

(d) state the date each such statement, report, memorandum or recording was prepared.

## ANSWER

Cas. No. 06-25162-CA-21

## INTERROGATORY NO. 8

Have you heard or do you know about any statement or remark made by or on behalf of any party to this lawsuit, other than yourself, concerning any issue in this lawsuit? If so, state the name and address of each person who made the statement or statements, the name and address of each person who heard it, and the date, time, place, and substance of each statement.

## ANSWER

Case No. 06-25162-CA-21

## INTERROGATORY NO. 9

Do you intend to call any expert witnesses at the trial of this case? If so, state as to each such witness the name and business address of the witness, the witness's qualifications as an expert, the subject matter upon which the witness is expected to testify, the substance of the facts and opinions to which the witness is expected to testify, a summary of the grounds for each opinion, and identify every document upon which each expert witness has, may have or is expected to rely.

## ANSWER