UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 07-21605-CIV-LENARD/GARBER

LEONARD CHERNYS,

    Plaintiff,
v.

STANDARD PACIFIC OF SOUTH
FLORIDA, G.P. INC., a foreign profit
corporation, and STANDARD PACIFIC
CORP., an unregistered corporation,

    Defendants.
_____/

## SECOND AMENDED COMPLAINT

Plaintiff, Leonard Chernys, files his Second Amended Complaint and sues Defendants, Standard Pacific of South Florida, G.P. Inc. and Standard Pacific Corp. (collectively, "Defendants"), and alleges as follows:

1. This is an action for damages relating to, *inter alia*, the unlawful termination of Plaintiff by Defendants. The damages sought herein exceed the sum of fifteen thousand dollars exclusive of costs, interest and attorneys' fees.

2. Plaintiff, Leonard Chernys ("Chernys") is a resident of Miami-Dade County, Florida and is over the age of eighteen.

3. Defendant, Standard Pacific of South Florida, G.P. Inc. ("Standard Pacific") is a foreign corporation engaging in the construction of residential homes, town homes and apartments in the Tri-County areas of Palm Beach, Broward, and its principal place of business, Miami-Dade County, Florida.

SECOND AMENDED COMPLAINT
CASE NO.: 07-21605-CIV-LENARD/GARBER

4. Defendant, Standard Pacific Corp. is a corporation organized under the laws of the State of California, not registered in Florida, does business in Miami-Dade County, Florida and is the parent corporation of Standard Pacific of South Florida, G.P., Inc.

5. Chernys began his career with Standard Pacific, Inc.'s predecessor, Westbrooke Communities, Inc. ("Westbrooke"), more than 27 years ago.

6. As a young man he held many positions with Westbrooke and its successors and was responsible for the development of many residential communities in South Florida. In fact, Chernys held the General Contractor's license used by the company to build these projects.

7. He was recognized by his employer and peers as being a team player, an astute businessman and a person of great trust. In fact, at Westbrooke he was one of the executives running the company.

8. During his years with the company, he was constantly called upon to take a leadership role in the company and repeatedly performed to his fullest potential, and as such the company prospered.

9. In April 15, 2002 Westbrooke was acquired by Standard Pacific Corp., one of the nation's largest homebuilders, and Chernys joined Standard Pacific.

10. At first, Chernys continued to serve as Standard Pacific's Senior Vice-President for Operations, which encompassed both purchasing and construction, then Senior Vice-President of Product Development, in which he continued to provide counsel and aid to both departments. As part of his duties, he was required to hire and train

subordinates who were less experienced and younger than he and who ultimately would replace him.

11. He was part of the key management team which led the company to great financial success. He, like other top executives, participated in a profit sharing program and received sizable distributions.

12. In August of 2004, discussions took place between Standard Pacific and its consultant, Jim Carr ("Carr"), also the former owner of Westbrooke, regarding Chernys' age, as he was approaching sixty years old and Standard Pacific proposed his retirement.

13. Carr dealt exclusively with Standard Pacific Corp.'s Chairman Michael Cortney regarding the negotiation about Chernys' retirement and discussed and agreed that his retirement should be done in a way to allow Chernys a "soft landing".

14. It was agreed that both Standard Pacific and Standard Pacific Corp. would pay Chernys a 2 ½ % share of the company's pre-tax income for 2005 and 2006 and that Chernys' would thus be given a "soft landing".

15. Carr relayed this "soft landing" proposal to Chernys. Chernys reluctantly agreed to the profit sharing proposed.

16. Chernys continued to labor during this crucial transition period as the Senior Vice-President for Product Development, and reported to the President Diana Ibarria ("Ibarria") to reach the company's goals they had set.

17. In 2006, Chernys served as the company Senior Vice-President of Product Development and was responsible for the company's move to new headquarters. This

process was handled in an expeditious fashion due to the termination of the company's lease.

18.   Chernys frequently spoke to Ibarria, provided her guidance and advice and remained active within the company on a full time basis. Ibarria expressed to Chernys her appreciation for his service and that his efforts and presence were needed and appreciated.

19.   2005 was a wonderful year for Standard Pacific Corp.; they had great sales and made a substantial profit. Chernys, as part of the management team, participated in the company's substantial profit sharing plan which was paid out in 2006. He received – as previously agreed to by Cortney and Carr – for these efforts a distribution in excess of 1 million dollars.

20.   In early 2006, prior to the receipt and/or payment of the 2005 2 ½ % share of the company's pre-tax income, he met with Ibarria and she advised him that he would not participate in the 2006 profit sharing plan as previously agreed upon, but that he could continue to work past 2006 for several more years.

21.   In reliance on these statements, despite the company's anticipated breach of the agreement, Chernys continued his employment and expected to stay several years.

22.   This decision would allow him to continue to work in a job he loved, with people who respected his leadership and talent and would serve as Senior Vice-President of Product Development. Chernys would assist and report to the company's President.

23.   In October of 2006, Chernys was told by Defendants to resign. He was provided the opportunity to stay on as a consultant for a year at a severely reduced rate of

pay and was again denied the right to receive his share, *i.e.*, the 2 ½ % of the pre-tax income of the company's Florida Division, "Westbrooke Homes". A copy of the Consultant's Agreement was attached to the original Complaint as **Exhibit A**.

24. In addition to the Consultant's Agreement, Defendants requested that Chernys consult counsel and agree to sign a release waiving all claims he had against Defendants, waive his rights and remedies under the Age Discrimination in Employment Act, Older Worker's Benefit Act and for other relief including the signing of a covenant not to compete, which clearly restricted his ability to make a living and had not been a prior criteria for employment.

25. He was never provided a severance package and never had an exit interview, though it was represented to him by email that he would receive a package, which would be in excess of $109,000.00

26. Chernys refused to sign the Consultant's Agreement and requested the payment of his profit sharing and salary and/or continued employment. Chernys' requests were denied and his employment was terminated.

27. After 27 years, Chernys was now treated as a *persona non-grata*, and his reiterated request that the company provide him an acceptable indemnity agreement for using his license was withheld.

## **COUNT I - BREACH OF CONTRACT**

28. Chernys re-alleges paragraphs 1 through 27 as stated herein.

29. Chernys and Defendants had an agreement that Chernys would receive 2 ½ % of pre-tax profits of the Westbrooke Homes Division for the years 2005 and 2006 (the "Agreement").

30. Chernys, honestly, faithfully, conscientiously, in good faith and in reliance on such Agreement fully discharged his duties to Defendants and performed in accordance with his Agreement.

31. In 2005, Defendants complied with the Agreement, and he was paid the 2 ½ % of pre-tax income for the year 2005, plus his salary.

32. Defendants breached the Agreement by terminating Chernys and not paying his 2006 2 ½ %  pre-tax income share.

33. As a result of Defendants' breach of the Agreement, Chernys has suffered damages.

34. All conditions precedent to bring this lawsuit have been performed, waived or excused.

WHEREFORE, Chernys respectfully requests that this Court enter judgment against Defendants and award Chernys damages, interest, attorney's fees, costs, interest on and judgment obtained, and grant such other and further relief as the Court deems just and  proper.

## COUNT II - AGE DISCRIMINATION
(Violation of 29 U.S.C. §  631, *et seq.*)

35. Chernys re-alleges paragraphs 1 through 27 as stated herein.

36. This action is brought for violations of the Age Discrimination in Employment Act, 29 U.S.C. § 631, *et seq.* ("ADEA").

37. Chernys timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) and has a received a notice of Right to Sue Letter. *See* Notice of Right to Sue attached hereto as **Exhibit B**.

38. At all material times, Chernys was an "employee" and a member of a protected group within the meaning of the ADEA.

39. At all material times, Defendants were an "employer" within the meaning of the ADEA.

40. At all material times, Chernys was qualified to perform duties of his position with Defendants.

41. During 2006, Chernys' employment was terminated because of his age, and he was subsequently replaced by another employee (or his job duties were assumed by another employee) who was substantially younger.

42. As a result of Defendants' wrongful termination, Chernys has suffered damages.

49. All conditions precedent to bringing this lawsuit have been performed, waived or excused.

WHEREFORE, Chernys respectfully requests that this Court enter judgment against Defendants and award Chernys damages for front-pay, back-pay, liquidated damages, his attorneys' fees, and grant such other and further relief as the Court deems just and proper.

SECOND AMENDED COMPLAINT
CASE NO.: 07-21605-CIV-LENARD/GARBER

### **COUNT III - AGE DISCRIMINATION**
(Violation of Florida Statutes Section 760.01, *et seq*.)

50. Chernys re-alleges paragraphs 1 through 27 as stated herein.

51. This action is against Defendants for violations of Florida Statutes Section 760.01, *et seq*., the Florida Civil Rights Act.

52. Chernys timely filed a Charge of Discrimination with the EEOC and has a received a notice of Right to Sue Letter, and the requisite 180 days have passed permitting Chernys to file this claim.

53. At all material times, Chernys was an "employee" and a member of a protected group within the meaning of Florida Statutes Section 760.01, *et seq*.

54. At all material times, Defendants were an "employer" within the meaning of Florida Statutes Section 760.01, *et seq*.

55. At all material times, Chernys was qualified to perform duties of his position with Defendants.

56. During 2006, Chernys' employment was terminated because of his age, and he was subsequently replaced by another employee (or his job duties were assumed by another employee) who was substantially younger.

57. As a result of Defendants' wrongful termination of Chernys, Chernys has suffered damages.

58. All conditions precedent to bringing this lawsuit have been performed, waived or excused.

SECOND AMENDED COMPLAINT
CASE NO.: 07-21605-CIV-LENARD/GARBER

WHEREFORE, Chernys respectfully requests that this Court enter judgment against Defendants and award Chernys damages for front-pay, back-pay, liquidated damages, his attorneys' fees, and grant such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Chernys demands a trial by jury on all causes of action and issues triable as such.

Dated:  February 26, 2009
Miami, Florida

Respectfully submitted,

| GARY M. CARMAN, P.A | DAMIAN & VALORI, LLP. |
|---|---|
| Mellon Financial Center | 1000 Brickell Avenue, Suite 1020 |
| 1111 Brickell Avenue, Suite 2050 | Miami, FL 33131 |
| Miami, FL 33131 | Telephone:  305-371-3960 |
| Telephone:  305-379-8300 | Facsimile:  305-371-3965 |
| Facsimile:  305-379-4404 | mdamian@dvllp.com |
| gmc@carmanlawfl.com | |
| | |
| By:  /s Gary M. Carman | By:  /s Melanie E. Damian |
| Gary M. Carman, P.A. | Melanie E. Damian, P.A. |
| Florida Bar No.79409 | Florida Bar No. 0099392 |
| | Kenneth Dante Murena, P.A. |
| | Florida Bar No. 0147486 |

SECOND AMENDED COMPLAINT
CASE NO.: 07-21605-CIV-LENARD/GARBER

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via U.S. mail and by CM/ECF to: **Christine L. Wilson, Esq.** and **Jennifer A. Schwartz, Esq.**, Jackson Lewis, LLP, counsel for Defendants, One Biscayne Tower, Suite 3500, Two South Biscayne Blvd., Miami, Florida  33131, on this _____ day of February, 2009.

_____
Melanie E. Damian