UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 07-21605-CIV-LENARD/GARBER

LEONARD CHERNYS, an individual,  )
                                            )
            Plaintiff,  )
                                              )
v.  )
                                            )
STANDARD PACIFIC OF SOUTH  )
FLORIDA, G.P. INC., a foreign profit  )
corporation, and STANDARD PACIFIC  )
CORP., an unregistered corporation,  )
                                            )
            Defendants.  )

## DEFENDANTS' MOTION FOR SUMMARY FINAL JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

Defendants, STANDARD PACIFIC OF SOUTH FLORIDA, G.P., INC. ("SPSF") and STANDARD PACIFIC CORP ("Standard Pacific"), hereby file their Motion for Summary Final Judgment and Supporting Memorandum of Law dismissing Plaintiff's claims of breach of oral contract and age discrimination under the Age Discrimination in Employment Act ("ADEA") 29 U.S.C. § 631 *et seq.* and the Florida Civil Rights Act, Fla. Stat. § 760 *et. seq.* ("FCRA"). [1]

      1.    Plaintiff's claim of breach of oral contract fails for multiple reasons. First, because there was no meeting of the minds as to several crucial terms such as the length of the alleged contract, there is no enforceable contract. Second, as the alleged contract could not have

---

[1]     On February 11, 2009, this Court denied without prejudice Defendants' Motion for Summary Final Judgment on the basis of mootness. [D.E. #148] The Court gave Defendants the right to re-file the motion upon the resolution of a jurisdictional issue. Id. Based on the Plaintiff's filing of the Second Amended Complaint containing a claim under the Age Discrimination in Employment Act, 29 U.S.C. § 626 *et seq.*, the Court has jurisdiction over this case. [D.E. #152] Defendants re-file their Motion and Memorandum of Law and Undisputed Statement of Facts and refer to the docket for record evidence already on file with the Court.

CASE NO. 07-21605-CIV-LENARD/GARBER

been completed within one year, it is barred by the statute of frauds because it was not put into writing. Third, Plaintiff attempts to avoid these problems by contending that the alleged promise to receive profit sharing was solely for his past performance. As such, there was no consideration for the alleged promise and no enforceable contract exists.

2.    Summary judgment is appropriate dismissing Plaintiff's ADEA and FCRA claims because he fails to establish a prima facie case of discrimination. Specifically, Plaintiff has not produced evidence demonstrating that SPSF intended to discriminate on the basis of age in selecting him for a reduction in force ("RIF"). Even if he could prove a prima facie case, Plaintiff cannot prove that his discharge in conjunction with an office-wide RIF is pretextual.

3.    For all these reasons, the Second Amended Complaint should be dismissed in its entirety.

## MEMORANDUM OF LAW
## BRIEF SUMMARY OF FACTS[2]

### A.    The Parties

Defendants build and sell homes and residential communities. Cortney Aff. ¶ 4 [D.E. #64-11]; Ibarria Dep. at 192-93 [D.E. #64-6]. Plaintiff, who was hired by Standard Pacific in 2002, was employed as Senior Vice President of Product Development for Standard Pacific of South Florida at the time of his discharge in the 2006 RIF. Based on the sudden downward trend in the housing market in 2006, SPSF, like most Florida real estate development companies, suffered and continues to suffer a significant decrease in income. Ibarria Dep. at 72:1-73:18; [D.E. #64-5] 123:9-124:25 [D.E. #64-6]. Thus, in the fall of 2006, SPSF had a reduction in its

---

[2]    Concurrent with this Motion, Defendants have filed a detailed Statement of Undisputed Facts pursuant to Rule 7.5 of the Local Rules of the Southern District of Florida. The undisputed facts are derived from the depositions of Plaintiff ("Pl. Dep.") [D.E. #64:2-3], Diana Ibarria ("Ibarria Dep.") [D.E. #64:5-6], James Carr ("Carr Dep.") [D.E. #64:7- 8]; Hal Eisenacher ("Eisenacher Dep.") [D.E. #64-9]; and the affidavits of Diana Ibarria ("Ibarria Aff.") [D.E. #64-10], and Michael Cortney ("Cortney Aff."). [D.E. #64:1-11)].

workforce in which Plaintiff's position was eliminated.  Ibarria Dep. at 65:4-12, 73:8-18, 88:14-22, [D.E. #64-5] 126:2-15 [D.E. #64-6].

**B.      The Alleged Oral Contract**

Plaintiff's breach of oral contract claim arises from a conversation which allegedly occurred in the summer of 2004 between James Carr, the former President of Westbrooke (who was working as an independent contractor for SPSF), and Standard Pacific's President, Michael Cortney.  Second Amended Complaint ¶¶ 12-14; Carr Dep. at 73:8-74:21 [D.E. #64-7].  Plaintiff claims that after this conversation Carr told him:

> that there was an agreement that both Mike, Hal and Jim for the
> years that I had worked to provide me with a retirement package.  I
> think he called it a soft landing or something like that.  I don't
> remember exactly.  By paying me the equivalent dollars of the
> profit sharing, which we were compensated by, the two and a half
> percent for pretax profit for the years '05 and '06.

Pl. Dep. at 58:12-20 [D.E. #64-2].

This testimony is inadmissible hearsay and cannot be considered on summary judgment.  See Omnibus Order D.E. 135 at 4 ("Carr's statements cannot be construed as an admission by a party opponent because he was not an agent of Standard Pacific") (citing Consulting Agreement [D.E. #131-2, p. 3]).

Carr, who was acting as a consultant for SPSF, testified that he proposed a plan to "ease" Plaintiff out of SPSF and allow Plaintiff to receive a profit sharing distribution for two more years because of his tenure with the Company.  Carr Dep. at 73:18-74:18 [D.E. #64-7]. Carr admits that when speaking to Cortney, Carr never mentioned individual years.  "The conversation was two years. . . .  It was two years. Individual years were not delineated by 04, 05, 06 et cetera."  Id. at 74:5-18.  Moreover, there was no discussion about the different variables

CASE NO. 07-21605-CIV-LENARD/GARBER

that could occur, such as what would happen if Plaintiff was terminated for cause. Id. at 88:3-89:2, 90:13-25, 92:17-21. This "agreement" was not put into writing. Id. at 90:6-11

After that conversation, Plaintiff received profit sharing for two more years. Plaintiff received 2-1/2 % of the pre-tax profits of SPSF in 2004 and again in 2005. Pl. Dep. at 86:20-87:10, 89:2-14 [D.E. #64-2]. His annual distribution for those two years was $420,129.16 and $1,131,513.30, respectively. Id.

In this lawsuit, Plaintiff argues that since Carr's and Cortney's conversation occurred in mid-2004, the "two years" proposed by Carr was actually three years. Carr Dep. at 73-77 [D.E. #64-7]; Second Amended Complaint ¶ 14. Thus, he claims that Carr and Cortney had a verbal agreement which was breached because Carr believed (and advised Plaintiff) that SPSF would pay him profit sharing through the end of 2006. Pl. Dep. at 57:16-58:24 [D.E. #64-2]; Carr Dep. at 75:16-19, 77:24-25 [D.E. #64-7].

Michael Cortney does not recall the specific conversation James Carr claims he had with Cortney, nor does Cortney recall discussing continuing Plaintiff's profit sharing for a specific period of time. Cortney Aff. ¶¶ 13-19 [D.E. #64-11]. In fact, even Cortney did not have a multi-year agreement to receive profit sharing, and such agreements are contrary to the Company's general practices. Id. ¶¶ 15-16. Cortney did not agree to provide Plaintiff with profit sharing through 2006. Cortney's plan was to provide Plaintiff with profit sharing only through 2005. Id. ¶¶ 16, 19.

Even if the alleged statements by the consultant, Carr, to Plaintiff were admissible, Plaintiff's breach of contract claim fails for several other reasons. First, it is an unenforceable contract. Even assuming that Plaintiff's claims are true, it is evident there was no meeting of the minds about several essential terms of the supposed agreement. Most

importantly, there was no agreement regarding the number of years Plaintiff would continue to receive profit sharing. The alleged agreement also was silent about what would occur if Plaintiff's employment was terminated (as it was), or if he stole from the company, or went to work for a competitor. Carr Dep. at 88:7-89:2; 90:13-25; 92:17-21 [D.E. #64-7]. Plaintiff attempts to sidestep this legal deficiency by asserting that the three years of bonuses were solely to compensate him for past work. Pl. Depo. at 78:34-79:13; 81:20-24 [D.E. #64-2]. But this cannot save him. If the 2006 bonus payment was for his past work, the alleged contract fails for lack of consideration. Standard Pacific would be free to change its mind at any time. Third, the alleged three-year oral contract could not have been performed within one year and is barred by the statute of frauds. As the terms of this "agreement" were dependent on SPSF's profits for each year, the alleged contract could not be completed until year-end 2006. It is difficult to imagine a claim more apt for application of this important legal requirement. Plaintiff was terminated before the end of 2006 at the time profit sharing would have been distributed, even if it had been promised, so he cannot change his theory to assert that such a bonus was actually earned.

## C.    Plaintiff Was Discharged in a Reduction in Force

The facts demonstrate that when the South Florida real estate market started to decline and SPSF's income decreased, the SPSF management team discussed reducing the workforce months before the event. Pl. Dep. at 139:16-141:20 [D.E. #64-2] Plaintiff's position, Senior Vice-President of Product Development, was eliminated in the fall of 2006 because the Company was not developing new products – it had to sell what it concurrently possessed. Ibarria Dep. at 88:18-22, 90:23-24 [D.E. #64-5], 127:14-21 [D.E. #64-6]. No one else performed Plaintiff's job, and he has not been replaced. Pl. Dep. at 154:5-23 [D.E. #64-2]. At his

CASE NO. 07-21605-CIV-LENARD/GARBER

deposition, Plaintiff could not point to similarly situated individuals who are younger than he is who were treated better. Id. at 152:8-21.

SPSF's need for the RIF is demonstrated by the drop in profits from $45 million in 2005 to $41.6 million in 2006, and the projected dramatic drop for 2007. Ibarria Dep. at 123:9-124:22 [D.E. #64-6]  SPSF's 2007 profits were worse than projected as estimated revenue for 2007 is a loss of $21 million. Ibarria Aff. ¶ 8 [D.E. #64-10]

SPSF's employment statistics demonstrate that age plays no role in their decisions.[3] Prior to the reduction in force, SPSF employed 125 employees. Ibarria Aff. ¶ 11 and Exh. C thereto [D.E. #64-10]. Of the 125 employees, 74 (59.2%) employees were 40 or older, and 17 (13.6%) employees were 60 or older. Id. After the reduction in force, the percentage of the Company's workforce age 40 and older remained the same (59.5%), and the percentage of those age 60 and older actually increased (14.8%). Id.

As the following demonstrates, the pleadings, depositions, discovery responses, affidavits and other evidence on file establish that there are no genuine issues as to any material fact regarding these claims, and that Defendants are entitled to summary judgment as a matter of law.

## ARGUMENT
### STANDARD OF REVIEW

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

---

[3]    Neither James Carr nor Hal Eisenacher played any role in the SPSF 2006 RIF. Carr Dep. at 94:2-12 [D.E. #64-7]; Eisenacher Dep. at 76:1-9 [D.E. #64-9]. Cortney played no role in selecting employees for termination. Cortney Aff. ¶ 23 [D.E. #64-11].

CASE NO. 07-21605-CIV-LENARD/GARBER

(1986). In order to defeat a defendant's properly supported motion for summary judgment, the

plaintiff must make an affirmative presentation of specific facts showing a genuine issue, and

may not merely rely on the general allegations of the pleadings. Mora v. Univ. of Miami, 15 F.

Supp. 2d 1324, 1331 (S.D. Fla. 1998) (citations omitted), aff'd, 189 F.3d 485 (11th Cir. 1999).

Further, the plaintiff must make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The failure of proof concerning an

essential element of the plaintiff's case necessarily renders all other facts immaterial and requires

the court to grant the motion for summary judgment. Id.

## I.    SUMMARY JUDGMENT IS PROPER DISMISSING THE CLAIM FOR BREACH OF ORAL CONTRACT

### A.    Plaintiff's Testimony About His Conversation with Jim Carr Is Inadmissible Hearsay

Plaintiff testified he had a conversation with Jim Carr, an independent contractor,

in which Carr stated:

> that there was an agreement that both Mike, Hal and Jim for the years that I had worked to provide me with a retirement package. I think he called it a soft landing or something like that. I don't remember exactly. By paying me the equivalent dollars of the profit sharing, which we were compensated by, the two and a half percent for pretax profit for the years '05 and '06."

. . .

> The issue was we would continue '04 under the current circumstance, and that the retirement package would be for –'05 and '06.

Pl. Dep. 58:12-20, 59:2-6 [D.E. #64-2].

As held by Magistrate Judge Garber, out-of-court statements by Carr that are

presented for the truth of the matter asserted, i.e., that Plaintiff was to receive profit sharing in

2005 and 2006, are inadmissible hearsay. [D.E. #135:3-4]   "Carr's statements cannot be

construed as an admission by a party opponent because he was not an agent of Standard Pacific when he made the statements at issue." Id.; Molina v. Jiffy Lube Int'l., Inc., 2008 U.S. Dist. LEXIS 85215, *3 (S.D. Fla. 2008)(out-of-court statements that would be inadmissible hearsay at trial are not admissible as substantive evidence in a summary judgment motion)(citing Macuba v. Deboer, 193 F.3d 1316, 1323-24 (11th Cir. 1999)(out-of-court statements introduced on summary judgment either must not qualify as hearsay, must fall under one of the hearsay exceptions or must not be admitted as substantive evidence).

## B.    There Is No Contract Because There Was No Meeting of the Minds

Even if the alleged statements by Carr were admissible, there was no contract formed. Florida law is well established that in order to state a claim for breach of contract, a plaintiff must demonstrate (1) the existence of a contract; (2) breach of the contract; and (3) damages. Leahy v. Batmasian, 960 So. 2d 14, 18 (Fla. 4th DCA 2007). Additionally, "[i]n order that there be a contract, the parties must have a definite and distinct intention common to both, and without doubt or difference. Until all understand alike, there can be no assent, and therefore no contract. Both parties must assent to the same thing in the same sense, and their minds must meet as to all the terms." Webster Lumber Co. v. Lincoln, 94 Fla. 1097, 1113, 115 So. 498, 502 (1927) (contract never formed because there was no mutual assent as to essential terms). "Mutual assent is an absolute condition precedent to the formation of the contract. Absent mutual assent, neither the contract nor any of its provisions come into existence." David v. Richman, 568 So. 2d 922, 924 (Fla. 1990); In re Paxson Elec. Co., 248 B.R. 451 (M.D. Fla. 2000) (same). "A party cannot recover in a breach of contract action unless there was a 'meeting of the minds' upon the essential terms of the agreement." Iraola & CIA, S.A. v. Kimberly-Clark Corp., 325 F.3d 1274, 1285 (11th Cir. 2003) (granting summary judgment).

The underlying facts of <u>Paxson</u> are quite similar to those at hand. In <u>Paxson</u>, the plaintiff claimed that in exchange for his agreement to continue employment, he requested to receive profit sharing which was verbally approved by the president. The president testified that he did not recall being asked for a percentage of the profits, or a specific conversation regarding profit sharing. The president testified that he would not and did not agree to the profit sharing arrangement because it was inconsistent with the company's established business practices and never had such an arrangement with any of its employees. 248 B.R. at 455. The court held that there was no meeting of the minds with regard to the profit sharing and there was no agreement on the essential elements that the plaintiff propounded. Thus, there was no enforceable contract. <u>Id.</u> at 462 (citing <u>Webster Lumber</u>, 115 So. at 502).

Here, Plaintiff alleges that an oral conversation between Carr and Cortney in the summer of 2004 created a three-year contract and entitles him to receive profit sharing for 2006. Second Amended Complaint ¶¶ 12-14. The testimony of Carr and Cortney, however, indicates there was no meeting of the minds on several essential elements. Carr testified that although he never discussed specific years (e.g., 2004, 2005, 2006) with Cortney, he proposed that Plaintiff would receive profit sharing for "two years." Carr. Dep. at 73:25-74:18 [D.E. #64-7]. Carr contends "two years" meant Plaintiff would receive profit sharing for three calendar years: 2004, 2005, and 2006. <u>Id.</u> at 75:9-21. Carr admits, "it just wasn't that detailed a conversation," and there was no discussion as to any essential elements of the alleged agreement such as what would happen if Plaintiff's employment ended mid-year or if he died. <u>Id.</u> at 88:7-89:2; 90:13-25.

Cortney does not recall a specific discussion with Carr on the issue. Cortney Aff. ¶ 13 [D.E. #64-11]. Cortney never agreed to provide profit sharing to Plaintiff through 2006. <u>Id.</u> ¶ 16. Indeed, Plaintiff signed an acknowledgement at the beginning of his employment which

stated all changes to his compensation had to be in writing by the Chief Executive Officer. Pl. Dep. at 44-45 and Exh. 1 thereto [D.E. #64-2]. Cortney himself did not even have such an agreement as the one Plaintiff claims he had. Id. According to Cortney, it was his understanding and intention that 2005 was the last year the Company planned to pay Plaintiff profit sharing. Id. ¶ 19.

Here, as in Paxson, Plaintiff asks the Court to find an enforceable contract exists and that Defendants breached that contract. The record evidence demonstrates there was no meeting of the minds regarding the length of time Plaintiff would receive profit sharing or what would occur if Plaintiff's employment ended, as it did, prior to year-end 2006. Compare Carr Dep. at 75:9-76:5 [D.E. #64-7]; Cortney Aff. ¶¶ 13-19 [D.E. #64-11]. As such, no enforceable contract exists and summary judgment is appropriate. David v. Richman, 568 So. 2d 922, 924 (Fla. 1990) (holding no contract exists when there is no "meeting of the minds" or mutual assent as to the essential terms of the contract; "mutual assent is an absolute condition precedent to the formation of the contract. Absent mutual assent, neither the contract nor any of its provisions come into existence. While a meeting of the minds may not be necessary as to every term for a contract to be formed, mutual assent is certainly necessary as to an essential term . . .") (citing Blackhawk Heating & Plumbing Co. v. Data Lease Financial Corp., 302 So. 2d 404, 408 (Fla. 1974) (an agreement is not binding unless the parties agree on the essential terms and seriously understand and intend the agreement to be binding on them); Restatement (Second) of Contracts, § 33, comment a. (1981) ("If the essential terms are so uncertain that there is no basis for deciding whether the agreement has been kept or broken, there is no contract.")). Taking the facts as asserted by Plaintiff to be true, the essential terms of the contract were so uncertain that there can be no enforceable contract and summary judgment is appropriate.

**C.     Plaintiff's Oral Contract is Barred by the Statute of Frauds**

As no enforceable agreement exists, it is unnecessary for the Court to reach this issue, but the Breach of Contract claim also fails under the statute of frauds. Florida's statute of frauds requires that an agreement that cannot be "performed within the space of one year" must "be in writing and signed by the party to be charged therewith or by some other person by her or him thereunto lawfully authorized." See Fla. Stat. § 725.01. The purpose of the statute of frauds is "to intercept the frequency and success of actions based on nothing more than loose verbal statements and mere innuendo, and should be strictly construed to accomplish its purpose." Yates v. Ball, 132 Fla. 132, 181 So. 341, 344 (Fla. 1937); Tanenbaum v. Biscayne Osteopathic Hosp., Inc., 190 So. 2d 777, 779 (Fla. 1966); Rowland v. Ewell, 174 So. 2d 78, 80 (Fla. 2d DCA 1965) (promise to pay bonus in five years barred). Because Plaintiff claims that he had an oral agreement with Defendants commencing in 2004 which provided that he would receive a profit sharing distribution through the end of 2006, the alleged agreement is barred by the statute of frauds because it never was reduced to writing.

**D.     Plaintiff is Not Entitled to Profit Sharing for Past Work**

Plaintiff attempts to avoid the devastating impact of the above legal principals by asserting that the profit sharing he seeks was entirely for past work. Plaintiff testified as follows:

> Q:     To your knowledge, was there any agreement between Mr. Carr and Mr. Cortney about what would happen to the profit sharing if you were discharged for cause?
>
> A:     . . . It was my understanding from Jim, again, that this retirement package would have been paid then. In other words, the intent was to have me retire, and it was compensation for what I had already accomplished. And that he felt it could have been paid, you know, in '04, '05 or '06.

Pl. Dep. at 78:24-79:13 [D.E. #64-2].

CASE NO. 07-21605-CIV-LENARD/GARBER

A:      Again, the intent as expressed to me by Mr. Carr was not for what was going to happen, but what had happened.  The retirement package, I guess we would call it, he felt it was already earned . . .

Id. at 81:20-24.

In addition to the other failings, this claim fails as a matter of law for lack of consideration.  It is a well-established contract principle that past consideration cannot be used to create an enforceable contract.  See Karp v. Roach, 1990 U.S. Dist. LEXIS 17618 (Dist. D.C. Dec. 21, 1990) (granting defendant summary judgment as to plaintiffs' claim they were promised a "bonus" for prior work which they had performed for the employer).  In Karp, the plaintiffs had been long-time employees of the defendant, and their employment was terminated as part of a cost-cutting program.  Id. at * 29.  The plaintiffs asserted a number of claims, including a claim to recover bonuses for past work performed.  Id.  The court granted defendants' motion for summary judgment as to plaintiffs' bonus claim, finding that the plaintiffs already had been compensated for past work performed.  Id.  Similarly, in the instant case, Plaintiff admits that he provided no additional consideration for a 2006 profit-sharing distribution.  This fact is not disputed. Accordingly, no enforceable contract exists, and Plaintiff's breach of contract claim fails as a matter of law.

**E.      Plaintiff Was Not Employed at Year End 2006**

Even if there were an enforceable contract, and even if it was not barred by the statute of frauds, Plaintiff would not have been entitled to a profit sharing bonus because he did not work the full year of 2006 and was not employed when profit sharing was distributed.  As noted by the only writing received by Plaintiff regarding the receipt of a profit sharing bonus, "no profit sharing bonus for the period shall be paid should you terminate your employment prior to the end of the year or should you be discharged for cause prior to the end of the year." Cortney Aff. Exh. A [D.E. #64-11].  Plaintiff's employment ended on October 6, 2006, thus, he

CASE NO. 07-21605-CIV-LENARD/GARBER

was not entitled to payment even if there were an enforceable contract.[4] See, e.g., Telesphere Int'l v. Scollin, 789 So. 2d 1152 (decision to eliminate portion of business resulting in Plaintiff's discharge constitutes cause).  Accordingly, Plaintiff has no enforceable right in a bonus or profit sharing distribution and summary judgment in Defendants' favor on this claim is appropriate.

## II.   SUMMARY JUDGMENT IS PROPER DISMISSING THE CLAIMS FOR AGE DISCRIMINATION

### A.   Plaintiff Cannot Prove a Prima Facie Case of Discrimination

It is well settled that in order to establish a prima facie case of age discrimination where a position is eliminated, the Plaintiff must demonstrate (1) that he was in a protected age group and was adversely affected by an employment decision; (2) that he was qualified for his current position or to assume another position at the time of discharge; and (3) evidence by which a fact finder could reasonably conclude that the employer intended to discriminate on the basis of age in reaching that decision.   See Bell v. Capital Veneer Works, No. 06-12253, 2007 U.S. App. LEXIS 2032 (11th Cir. Jan. 30, 2007) (affirming summary judgment for defendant); Smith v. J. Smith Lanier & Co., 352 F.3d 1342, 1344 (11th Cir. 2003) (affirming summary judgment for defendant) ; Vaughn v. Morgan Stanley DW Inc., No. 05-12139, 2005 U.S. App. LEXIS 26408 (11th Cir. Dec. 1, 2005) (affirming summary judgment for defendant); Rowell v. Bellsouth Corp., 433 F.3d 794, 798 (11th Cir. 2005) (affirming summary judgment for defendant).[5]  Plaintiff has produced no evidence to meet the fourth prong of his burden of proof.

---

[4]   See Welland v. Citicorp, Inc., 2003 U.S. Dist. LEXIS 22721, *50 (S.D.N.Y. Dec. 17, 2003) (where the relevant policy requires employment through a certain date and the employee was discharged before that date, the employee does not have a valid claim) (citing Zolotar v. N.Y. Life Ins. Co., 172 A.D. 2d 27, 32 (N.Y. 1st Dept. 1991) (holding that employee's involuntary termination prior to the date required by bonus policy prevented the employee from receiving bonus); Bayer v. Oxford Univ. Press, Inc., 270 A.D. 586, 588 (N.Y. 1st Dept. 1946), aff'd, 296 N.Y. 780 (1947) (stating that employee had no rights in a bonus where he was not in the defendants' employ on the required date).

[5]   The legal analysis under the ADEA and the FCRA is the same. See Zaben v. Air Prods. & Chems. Inc., 129 F.3d 1453, 1455 n.2 (11th Cir. 1997).

CASE NO. 07-21605-CIV-LENARD/GARBER

To satisfy the last prong, a "plaintiff must produce some evidence that an employer has not treated age neutrally, but has instead discriminated based upon it. Specifically, the evidence must lead the fact finder reasonably to conclude either that the defendant: (1) consciously refused to consider retaining or relocating a plaintiff because of his age, or (2) regarded age as a negative factor in such consideration." Rowell, 433 F.3d at798. "Initially, the plaintiff must establish a prima facie case of discrimination. The employer then must respond with a legitimate, nondiscriminatory reason for its actions. In order to prevail, the plaintiff must establish that the employer's articulated legitimate, nondiscriminatory reason was a pretext to mask unlawful discrimination." Smith, 352 F.3d at 1344.

During this case, Plaintiff has attempted to mislead the Court by stating that there was a "consensus" among Carr, Cortney and Eisenacher that Plaintiff was "an old dog."[D.E. 84 at 13][6] Not only is this a gross mischaracterization of the record as the only time any such comments came up were during Carr's deposition, at most, Carr's statement establishes a non-employee's personal opinion about Plaintiff's inability to adapt to the changes brought about by Standard Pacific's acquisition of the company. In any event, Carr's deposition statements are inadmissible as found by Judge Garber. See Omnibus Order D.E. 135 at 5 ("Standard Pacific should not be damaged by a third-party's idiosyncratic word selection. Moreover, the danger the language will cause unfair prejudice clearly outweighs its probative value.")

SPSF builds homes in South Florida. Ibarria Dep. at 192:23-93:2 [D.E. #64-6]. Because of the decline in the real estate market, SPSF's profits started to decline in 2006, with a

---

[6]     This was based on the following deposition testimony by Carr that Standard Pacific "wanted to do things their way and many of those things were radically different than the way that I did them, and his opinion, and by the way I concur with it, is that Lennie was unable to change the way he did business. It's the old you don't teach an old dog new tricks." (Carr Dep. at 55:4-11) [D.E. #64-7]

-14-

CASE NO. 07-21605-CIV-LENARD/GARBER

more drastic drop projected for 2007.  Id.. at 123:9-24:22.  In a cost saving measure, SPSF eliminated a number of positions as part of a reduction in force in the fall of 2006.  Pl. Dep. at 141:5-7, 142:9-13 [D.E. #64-2]; Ibarria Dep. at 126:6-15 [D.E. #64-6].  Plaintiff's position, which focused on new product development, was eliminated.  Ibarria Dep. at 88:18-22, 90:24-25 [D.E. #64-5].  There is no evidence that SPSF chose Plaintiff because of his age.  In fact, Plaintiff, who was the only person performing his job, could not name anyone he felt should have been terminated instead of him.  Pl. Dep. at 152:8-18, 155:16-56:1 [D.E. #64-2].  As such, Plaintiff fails to prove a prima facie case of discrimination, and summary judgment is appropriate dismissing Counts II and III.

**B.      Plaintiff Cannot Establish That Defendant's Legitimate, Non-Discriminatory Reasons for His Termination Reasons Are Pretextual**

SPSF has proffered undisputed evidence that as a result of reduced profitability, it implemented cost reduction measures including a reduction in force of approximately one-third of its workforce.  Courts have uniformly found that reductions in force because of financial difficulties are sufficient to fulfill a defendant employer's burden of production.  See Koppenal v. Nepera, Inc., 74 F. Supp. 2d 409, 413 (S.D.N.Y. 1999); see also Viola v. Philips Med. Sys. of North Am., 42 F.3d 712, 717 (2d Cir. 1994) (reduction in work-force); Woroski v. Nashua Corp., 31 F.3d 105, 109 (2d Cir. 1994) (business-justified company-wide reduction in force); Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1226 (2d Cir. 1994) (business down-turn and reduction in force); Dister v. Continental Group, Inc., 859 F.2d 1108, 1115 (2d Cir. 1988) (corporate reorganization); Gordon v. Fenniman, No. 94 Civ. 6972, 1998 U.S. Dist. LEXIS 3485, at *3 (S.D.N.Y. March 19, 1998) (severe economic difficulties required elimination of the plaintiff's department).  "[A] reduction-in-force or restructuring that results in an elimination of jobs often is a legitimate reason for dismissing an employee."  See Wilson v. Int'l Business

-15-

Machines, 323 F. Supp. 2d 370, 374 (N.D.N.Y. 2004) (citing Tarshis v. Riese Org., 211 F.3d 30, 37 (2d Cir. 2000)). Plaintiff's position was "unnecessary" at the time because he focused on developing new products and SPSF was not developing new products. Ibarria Dep. at 88-90 [D.E. #64-5]. Thus, it was one of the 37 positions eliminated in the RIF. Ibarria Aff. ¶ 10 [D.E. #64-10].

Since SPSF has articulated a legitimate, non-discriminatory reason for its employment action, the burden shifts back to Plaintiff to "introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination." Zaben v. Air Prods. & Chems., Inc., 129 F.3d 1453, 1457 (11th Cir. 1997). To do so, Plaintiff must present evidence establishing that: (1) Defendants' articulated reasons for its employment actions are false or pretextual; and (2) that Defendants' real reason for its action was based on discriminatory animus. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507-12 (1993). The evaluation is whether he has demonstrated "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could find them unworthy of credence." Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997). Discrimination cannot be inferred "from thin air." Norton v. Sam's Club, 145 F.3d 114, 119 (2d Cir. 1998), cert. denied, 525 U.S. 1001 (1998).

Even if Plaintiff could prove a prima facie case, summary judgment is appropriate because he has failed to proffer evidence demonstrating that Defendant's reasons for his discharge are pretextual. Polley v. Mohawk Indust., Inc., No. 05-12036, 2005 U.S. App. LEXIS 21110 (11th Cir. Sept. 28, 2005) (if an employer can establish it had a legitimate non-discriminatory reason for an employee's termination, it is irrelevant whether the employee satisfied his burden of establishing a prima facie case of age discrimination). Plaintiff admits

CASE NO. 07-21605-CIV-LENARD/GARBER

that the RIF was caused by the decline in sales at SPSF, the generic slow down within the industry, and the need to reduce costs. Pl. Dep. at 53-54, 141-42 [D.E. #64-2]. As part of this restructuring, Plaintiff's position was eliminated.  Additionally, based on Ms. Ibarria's relationship with Plaintiff, after the position was eliminated, Ibarria offered Plaintiff an opportunity to work as an independent contractor. Ibarria Dep. at 132:15-33:4 [D.E. #64-6].

Another factor disproving that age played a factor in Plaintiff's discharge is SPSF's employment statistics. The percentage of employees 40 and over remained the same, and employees over 60 years of age were not negatively impacted by the reduction in force as their percentage of the workforce slightly increased. Ibarria Aff. ¶ 11, Exh. C thereto [D.E. #64-10]. See Woodmar v. Haemonetics Corp., 51 F.3d 1087, 1093 n. 3 (1st Cir. 1995) (statistical evidence presented by an employer to show that workers in the protected class were not adversely treated is clearly relevant); Nieves v. Metropolitan Dade County, 598 F. Supp. 955 (S.D. Fla. 1984) (finding employer's statistical evidence indicated it held no prejudice against the protected category).

There is no evidence which demonstrates that SPSF's legitimate, non-discriminatory reasons for Plaintiff's termination are pretextual, and it is absurd for him to argue that the reduction in force and structural and organizational changes were implemented to terminate an employee over sixty years of age. As such, summary judgment is appropriate.

## CONCLUSION

For the reasons stated herein, summary judgment is appropriate dismissing this case with prejudice in its entirety and granting all other relief deemed appropriate.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

CASE NO. 07-21605-CIV-LENARD/GARBER

Dated:  March 6, 2009
      Miami, Florida

Respectfully submitted,

By: s/Christine L. Wilson
      Christine L. Wilson, Esq.
      Florida Bar No. 143588
      Email: *wilsonc@jacksonlewis.com*
      Jennifer A. Schwartz, Esq.
      Florida Bar No. 502431
      E-mail: schwartj@jacksonlewis.com
      JACKSON LEWIS LLP
      One Biscayne Tower, Suite 3500
      2 South Biscayne Boulevard
      Miami, Florida  33131
      Telephone: 305-577-7600
      Facsimile:  305-373-4466
      Attorneys for Defendants
      STANDARD PACIFIC OF SOUTH
      FLORIDA, G.P., INC. and STANDARD
      PACIFIC CORP.

## CERTIFICATE OF SERVICE

It is hereby certified that on the 6 of March 2009, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

s/Jennifer A. Schwartz_____
Jennifer A. Schwartz, Esq.

CASE NO. 07-21605-CIV-LENARD/GARBER

## SERVICE LIST

### Leonard Chernys v. Standard Pacific of South Florida, G.P. Inc., and Standard Pacific Corp.

### Case No. 07-21605-CIV-LENARD/GARBER
### United States District Court, Southern District of Florida

Gary M. Carman, Esq.
E-mail: *gmc@carmanlawfl.com*
GARY M. CARMAN, P.A.
Mellon Financial Center, Suite 2050
1111 Brickell Avenue
Miami, Florida 33131
Telephone: 305-379-8300
Facsimile:  305-379-4404
Counsel for Plaintiff/Leonard Chernys
Served via transmission of Notices of Electronic Filing generated by CM/ECF

and

Melanie E. Damian, Esq.
E-mail: *mdamian@dvllp.com*
DAMIAN & VALORI, LLP
1000 Brickell Avenue, Suite 1020
Miami, Florida 33131
Telephone:  305-371-3960
Facsimile:  305-371-3965
Co-counsel for Plaintiff/Leonard Chernys
Served via transmission of Notices of Electronic Filing generated by CM/ECF

Christine L. Wilson, Esq.
Email: *wilsonc@jacksonlewis.com*
Jennifer A. Schwartz, Esq.
E-mail: *schwartj@jacksonlewis.com*
JACKSON LEWIS LLP
One Biscayne Tower, Suite 3500
2 South Biscayne Boulevard
Miami, Florida  33131
Telephone:  305-577-7600
Facsimile:  305-373-4466
Attorneys for Defendants
Standard Pacific of South Florida, G.P. Inc., and Standard Pacific Corp.

-20-